LOCAL 103 OF the INTERNATIONAL UNION OF ELECTRICAL, RADIO AND MACHINE WORKERS, AFL–CIO, Appellant,

v.

RCA CORPORATION.

No. 74–2002.

United States Court of Appeals, Third Circuit.

Argued March 20, 1975.

Decided May 23, 1975.

Leonard M. Sagot, Thomas W. Jennings, Randall J. Sommovilla, Teitelman, Sagot, Herring, Jennings & Luber, Philadelphia, Pa., for appellant.

Irving R. Segal, James D. Crawford, Jacob P. Hart, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for appellee; Grover C. Richman, Sr., Richman, Berry, Ferren & Tyler, Haddonfield, N. J., of counsel.

Before ALDISERT, GIBBONS and GARTH, Circuit Judges.

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

This appeal requires us to decide whether a dispute over the interpretation and application of a provision in a collective bargaining agreement barring re-arbitration of questions or issues that were previously the subject of arbitration is arbitrable; if so, the dispute is for the arbitrator in the first instance, and not the courts. Contending that a 1946 arbitrator's decision bound the company, the union commenced this § 301 action[1] and sought to enjoin RCA's efforts to proceed with the current arbitration proceedings. After a hearing the district court denied all relief and dismissed the complaint. This appeal followed. We affirm.

Appellant, Local 103 of the International Union of Electrical, Radio and Machine Workers, AFL–CIO, and RCA Corporation have been signatories to successive collective bargaining agreements since 1936. The district court found, and the parties do not dispute, that:

---

1. Section 301(a) of the National Labor Relations Act, 29 U.S.C. § 185(a), provides:

 Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between

 any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

5. Each collective bargaining agreement entered into by the parties has provided for the resolution of disputes regarding the interpretation or application of any provision of the agreement through a multi-staged grievance procedure which culminates in final and binding arbitration pursuant to the rules of the American Arbitration [Association]. Further, each such contract since 1936, including the contract presently in effect, provides that, "In no event . . . shall the same question [or issue] be the subject of arbitration more than once."

6. Each collective bargaining agreement that has been in effect between the parties since 1936 has contained in identical language a provision presently designated as paragraph 4.04 that provides as follows:

WAGE RATES FOR NEW OCCUPATIONAL CLASSIFICATIONS: In the event that the [C]ompany desires to make any new occupational classifications, the hourly rates applicable thereto shall be determined by negotiations between the Company and the local Union, and the Company will supply the local Union with the occupational classification number, the definitions thereof, and the agreed hourly wage rates for such new occupational classifications.

In 1945 a dispute arose between the parties relating to the duties to be performed by employees holding occupational classification No. 271. Arbitrator J. O. Keller was selected, held hearings, and issued an award in Grievance No. 573 dated March 20, 1946:

The Company shall set about at once to prepare a "job description" of occupational classification No. 271 in accordance with paragraph 4.14 of the Agreement and shall then in accordance with paragraph 4.14 and/or paragraph 4.04, start necessary proceedings to negotiate the hourly rate with the Union.

The seeds of this controversy germinate not so much from the arbitrator's award as they do from the opinion he filed in support thereof. His opinion was seemingly simple and clear cut. He stated that he could not resolve the substance of Grievance No. 573 because no official job description had been prepared by the company and:

[U]ntil such a job description has been prepared and the hourly rate subscribed to by both the Company and the Union, the Arbitrator cannot determine whether an operator supposedly classified under this occupation is working within or without the occupation, no matter what past practices have been. The Company was supposed to have completed all job descriptions not later than June 30, 1945, and it would appear that this particular classification (271) has been overlooked.

In the course of his opinion he declared:

The Arbitrator believes that under the Agreement the Company has the right to make changes in the description of any occupational classification or to make new occupational classifications as it deems proper and right. It will undoubtedly wish to take advantage of this privilege from time to time in the interests of efficiency and economy. But when it uses this privilege the Agreement implies (paragraph 4.04) that such descriptions cannot be used until after the "hourly rates applicable thereto shall be determined by negotiations between the Company and the Union."

Apparently, it was not until 1971 that another job classification grievance arose. Unlike the 1945 dispute, the 1971 grievance relates to:

Creation of new job classification which encompasses the work performed in existing job classifications, and assignment to the new job classification of duties performed in existing occupations.[2]

2. Union's demand for arbitration, December 31, 1971, addressed to the Company, signed by A. Martin Herring, Attorney.

The "Remedy Sought" is:

> Abolishment of duplicate job classification, and Company to cease and desist assignment of duties in new job classification at lower pay rate; and retroactive pay for all those affected by the Company's action.[3]

During the May 21, 1974, arbitration hearing before arbitrator Christensen, the union introduced into evidence the 1946 decision and award, contending that the 1971 grievance is entirely controlled by arbitrator Keller's final and binding decision. The company disagreed.

 Rather than complete the arbitration proceedings it had demanded, the union sought to enjoin RCA's further arbitration efforts. The district court held that the question or issue presented and resolved in 1946 was not·identical to the question or issue presented in 1971. Therefore, it left to arbitrator Christensen the interpretation and effect of arbitrator Keller's· decision. Although we affirm the judgment of the district court, we do so for a different reason: It is the function of the arbitrator, not the court, to decide whether the "same question or issue" had been the subject of arbitration within the meaning of the collective bargaining agreement.[4]

The union would have a federal court interpret this collective bargaining agreement and rule, as a matter of federal law, that the question or issue presented in the current grievance was the subject of arbitration in 1946. We decline to allocate this interpretive role to the district courts.

 We begin our analysis with an overview of the function of the court in the administration of the arbitral processes contained in collective bargaining agreements. Congress, pursuant to § 301, has assigned to the courts the duty of determining whether a particular matter is arbitrable. John Wiley & Sons v. Livingston, 376 U.S. 543, 546–47,

84 S.Ct. 909, 11 L.Ed.2d 898 (1964); Local 616 v. Byrd Plastics, Inc., 428 F.2d 23, 25 (3d Cir. 1970). The reason for this assignment is obvious: "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 ·L.Ed.2d 1409 (1960). This expression of policy must be considered in conjunction with the strong Congressional declaration favoring settlement of labor disputes by arbitration. A balance has been achieved, and the function of the court is very limited:

> [T]he judicial ˙inquiry under § 301 must be strictly confined to the question whether the reluctant party did agree to arbitrate the grievance or did agree to give the arbitrator power to make the award he made. An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.

*Ibid.* at 582–83, 80 S.Ct. at 1353 (footnote omitted). Stated otherwise, when the parties have agreed to submit all questions of interpretation to the arbitrator, the function of the court is to ascertain "whether the party seeking arbitration is making a claim which on its face is governed by the contract." United Steelworkers v. American Manufacturing Co., 363 U.S. 564, 568, 80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403 (1960).

 Another function of the court surfaces when enforcement of an arbitration award is sought. In this respect, we have emphasized the primacy of "an arbitrator's interpretation of provisions of a collective bargaining agreement." Ludwig Honold Mfg. Co. v. Fletcher, 405 F.2d 1123, 1125 (3d Cir. 1969). There we observed that "[t]he Supreme Court has

---

**3.** *Ibid.*

**4.** It is well settled that we can affirm the judgment of a district court for reasons other than

those relied upon by the district court. Rhoads v. Ford Motor Co., 514 F.2d 931 (3d Cir. 1975).

addressed itself to this specific point in United Steelworkers of America v. Enterprise Wheel and Car Corp., 363 U.S. 593 [599], 80 S.Ct. 1358 [1362], 4 L.Ed.2d 1424 (1960): 'It is the arbitrator's construction which was bargained for and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his.' " *Ibid.*

We have also admonished the courts "to exercise the utmost restraint and to tread gingerly before intruding upon the arbitral process. The basic philosophy underlying the court's 'hands-off' policy is very simple—labor matters are best left to those who understand the language and the workings of the shop, those who have a precise knowledge of what has come to be known as the 'industrial common law'. Even the 'ablest judge cannot be expected to bring the same experience and competence [as an arbitrator] to bear upon the determination of a grievance, because he cannot be similarly informed.' " Lewis v. American Federation of State, County and Municipal Employees, 407 F.2d 1185, 1191 (3d Cir.), cert. denied, 396 U.S. 866, 90 S.Ct. 145, 24 L.Ed.2d 120 (1969) (footnote omitted).

█ Thus, we have emphasized that judicial review of an arbitrator's award is severely limited and that his interpretation of contractual provisions will not be disturbed "if the interpretation can in any rational way be derived from the agreement, viewed in the light of its language, its context, and any other indicia of the parties' intention; only where there is a manifest disregard of the agreement, totally unsupported by principles of contract construction and the law of the shop, may a reviewing court disturb the award." Ludwig Honold Mfg. Co. v. Fletcher, *supra*, 405 F.2d at 1128.

Guided by these principles we turn to the factual complex here presented. Had this been the first dispute involving job classifications, there is little doubt that the matter would have been arbitrable. Article 8 of the National Agreement provides:

> In the event there is any Grievance, dispute or difference between any employee in the Bargaining Unit or the local Union, or the Company . . . with respect to the interpretation or application of *any provision* of this Agreement, there shall be an earnest effort made to settle or dispose of such matters promptly . . . in the manner provided in this Grievance Procedure . . . .

(Emphasis added).

But, this is not the first dispute concerning job classifications; the decision and award of arbitrator Keller are also implicated. Thus, Paragraph 8.06 of Article 8 becomes relevant:

> In no event . . . shall the same question or issue be the subject of arbitration more than once.

█ Moreover, an interpretation of Paragraph 8.06 is essential to the proper resolution of the immediate grievance. Thus refined, the issue before us must follow a very narrow compass: Does a dispute as to the application of the re-arbitration provision constitute an arbitrable question under the contract? We hold that it does. First, we note that the arbitration clause, Article 8, is broadly written. Its scope encompasses "any provision" of the Agreement. Second, no provision in the contract removes a dispute over the interpretation or application of the re-arbitration provision from the arbitration process. Therefore, we cannot say "with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." United Steelworkers v. Warrior & Gulf Navigation Co., *supra*, 363 U.S. at 582–83, 80 S.Ct. at 1353. Consequently, we conclude that it is for the arbitrator to evaluate the relevance and effect of the 1946 arbitration award and opinion; it is for him to decide

whether it qualifies "in industrial common law", through "experience developed by reason and reason tried and tested by experience," [5] as the "same question or issue" presented by the immediate grievance which therefore may not "be the subject of arbitration more than once."

The union would have us bypass the arbitration process and have us rule that the 1946 decision "is conclusive and binding on the present dispute" [6] on the principle of *res judicata*. It argues:

> As Judge Adams speaking for this Court in Local 616 International Union of Electrical, Radio and Machine Workers v. Bird [sic] Plastics, Inc., 428 F.2d 23 (3rd Cir., 1970), stated: "A clause stating that a decision of an arbitrator is 'final and binding' is no doubt intended to establish a principle similar to res judicata and to bar reconsideration of the dispute fully decided."

There are several reasons why the union may obtain small comfort from this. First, in quoting Judge Adams, appellant has omitted the last three words of the sentence—"on the merits". *Ibid.* at 26. These words are crucial to an understanding of the precise issue before us in *Byrd Plastics*: whether a second arbitrator could reach the merits of a grievance when a prior arbitrator dismissed the identical grievance on procedural grounds. Thus, all we held was that the grievance remained the subject of arbitration. Second, there is no statement, explicit or implicit, in *Byrd Plastics* suggesting that the federal court should oust the arbitrator from interpreting or applying a re-arbitration provision of a collective bargaining agreement.

The union evidences the fear that prior decisions will be relitigated *ad infinitum* presaging a demise in finality and opening the door to abuse. We disagree. Open to the union, before the arbitrator, is the same contention it has presented to the courts, *i. e.*, that the "same question or issue" was previously "the subject of arbitration." So viewed, finality, consistent with the provisions of the agreement, will be preserved.

The judgment of the district court will be affirmed.

5. Pound, Remarks on Status of Judicial Precedent, 14 U.Cin.L.Rev. 324, 328 (1940).

6. Appellant's brief at 7.