UNITED ELECTRICAL RADIO AND MACHINE WORKERS OF AMERICA, and Local 1114 United Electrical, Radio and Machine Workers of America, Plaintiffs-Appellants,

v.

HONEYWELL INC., Defendant-Appellee.

No. 75–1166.

United States Court of Appeals, Seventh Circuit.

Argued May 20, 1975.

Decided Aug. 27, 1975.

Irving Meyers, Chicago, Ill., Robert Z. Lewis, New York City, for plaintiffs-appellants.

David A. Grabham, Marvin O. Granath, Minneapolis, Minn., James A. Burstein, Chicago, Ill., for defendant-appellee.

Before FAIRCHILD, Chief Judge, PELL and TONE, Circuit Judges.

PELL, Circuit Judge.

This case poses the questions of whether there exists an exception to the holding of the Supreme Court's *Steelworkers* trilogy,[1] that where a labor dispute arguably is subject to an arbitration clause in a collective bargaining agreement, a court must refrain from deciding the controversy and must defer to the arbitrator, and whether, if such an exception exists, the allegations of the complaint in the case before us bring it within that exception.

Plaintiffs, United Electrical, Radio and Machine Workers of America and its Local 1114 (Union) brought this action for violation of a collective bargaining agreement against Honeywell, Inc. (Company). Jurisdiction was alleged under 29 U.S.C. § 185.

The Company moved to dismiss the complaint under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure for lack of jurisdiction over the subject matter and failure to state a claim upon which relief can be granted. On January 16, 1975, in an unpublished memorandum opinion, the district court granted the Company's motion to dismiss on the ground of lack of jurisdiction on the rationale that the dispute fell within

---

1. *United Steelworkers of America v. American Mfg. Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

the arbitration clause of the collective bargaining agreement and, therefore, could not be litigated. This is an appeal from the order of the district court granting the motion to dismiss.

In reviewing the propriety of the dismissal of a complaint, the allegations of the plaintiff must be taken as true. The complaint alleged that members of the Union are employed at the Company's Arlington Heights, Illinois, facility which engages in the design, sale, and manufacture of automatic controls for commercial building operations. The Union has been certified by the National Labor Relations Board as the collective bargaining representative of certain categories of employees and has entered into a succession of collective bargaining agreements with the Company.

The current agreement became effective in March of 1974 and remains in effect until March 1976. The present contract and its predecessors stated in Article I that the Company recognized the Union as the exclusive collective bargaining agent for all production, inspection, model shop, toolroom, maintenance, janitorial, shipping, receiving and stockroom employees. The second section of the recognition clause in the present and previous contract provides:

"Supervisors, foremen, and others outside of the bargaining unit shall not perform work normally performed by employees in the bargaining unit except for the purpose of instruction and tryout of tools or equipment, experimental production, or in cases of extreme emergencies necessary to the proper function of the plant."

The continuing collective bargaining agreement provides for binding arbitration of disputes not settled through a three-step grievance procedure. The complete text of the grievance procedure clause is set out in the margin.[2]

The complaint further alleges that, pursuant to the grievance procedures, "Four arbitrators have decided during 1973 that, subject to the exceptions

2. "ARTICLE XXIII—GRIEVANCE PROCEDURE

"*Section 1.* All differences, disputes, and grievances that may arise between the Union and the Company shall be taken up within a reasonable time after they arise in the following steps within the time limits prescribed:

Step 1. Between the aggrieved employee and the department steward and the Department Foreman. The dispute during this step shall be treated orally. If no satisfactory settlement is reached under this step within one (1) working day, the matter shall be reduced to writing and referred to

Step 2. The aggrieved employee, department steward, chief steward, on the one hand, and the Department Foreman, General Foreman, and a representative of the Personnel Department on the other. If no settlement is reached within three (3) working days, the matter shall be referred to

Step 3. The Union representatives and the Grievance Committee on the one hand and Company representatives on the other.

"*Section 2.* Where grievances, controversies, or differences pertaining to the interpretation of this Agreement are not satisfactorily settled within five (5) days after the completion of steps 1, 2 and 3 above, the matter may be submitted as a dispute to an arbitrator selected in accordance with the rules and procedures of the American Arbitration Association by either the Union or the Company. The arbitrator shall have no power to add to, subtract from, or modify the terms of this Agreement; and shall rule only upon the interpretation and application of the terms of this Agreement. The compensation of the arbitrator shall be borne equally by the Company and the Union. The decision of the arbitrator shall be binding upon both parties to this Agreement.

"*Section 3.* Answers to all written grievances shall be in writing and submitted to the Union within the time limits hereinabove set forth.

"*Section 4.* Step 1 and 2 grievance meetings will be held during the hours of the shift on which the grievance occurs and employees representing the Union will be paid for all reasonable time spent in steps 1 and 2. Step 3 grievances will be handled between representatives of the Company and the Union during the normal daytime business hours and employees representing the Union will be paid for all reasonable time spent in such Step 3 meetings if the time is during their regular shift hours.

"*Section 5.* Grievances shall be filed within ten (10) work days after the occurrence of the incident unless failure to file is due to the absence of the employee involved."

aforesaid in Article I, Section 2, Honeywell is prohibited from assigning work normally performed by bargaining unit employees to supervisors, foremen, and all others outside of the bargaining unit, including Honeywell employees and outside contractors." Although the complaint does not clearly so state, this allegation would permit the Union to assert the additional facts outlined in its memorandum in opposition to the motion to dismiss submitted to the district court and in its brief on appeal. There, the Union stated that the arbitrators had upheld its grievances and that the Company had complied with the remedial aspects of the arbitration decision by making the affected employees financially whole. The Union does not appear to complain that once an award adverse to the Company has been made the Company has failed to comply promptly with the particular award. The complaint rather is that there is a failure to comply with the meaning of the award in subsequent cases.

The Union also alleged in its complaint that more than one hundred grievances protesting violation of the recognition clause are pending. We are unable to discern from the record the exact chronological relationship between the four successful arbitrations and the alleged one hundred other grievances. We do note in the Union brief that since the last of the four arbitration awards "at least six grievances have been filed." It is clear therefore that this is not a situation of four awards interpreting Article I and then one hundred grievance situations all occurring thereafter. The Union alleged that conduct by the Company constituted "massive, pervasive, willful and deliberate nullification of the recog-

nition and arbitration clauses . . . ," and has resulted in diminution of the bargaining unit's normal work and number of employees.

The complaint sought a variety of declaratory, injunctive, and monetary remedies. The Union asked the district court to declare that the Company had violated and nullified the recognition clause; that the arbitration clause was ineffective; and that the implied no-strike prohibition "shall be lifted." The Union sought injunctions requiring the Company to follow certain specified contractual provisions concerning the assignment of work and preventing the assignment of work outside the bargaining unit without prior approval of the Union. The Union also prayed for damages of $300,000 and costs and attorney's fees. The complaint further stated: "No prior application for the relief requested here has been made."

At the outset, we hold that the district court had jurisdiction over the subject matter of this case under 29 U.S.C. § 185(a).[3] The allegations are undisputed that this is a suit for violation of a contract between a company and a union in an industry affecting interstate commerce.

■ The Company's motion to dismiss was predicated on the grounds of lack of jurisdiction and failure to state a claim. Although the order of the district court dismissing the complaint uses the language of jurisdiction, the court's reasoning makes it clear that what was intended was a dismissal for failure to state a claim.[4] The issue on appeal, therefore, is whether it was error to dismiss the complaint for failure to state a claim upon which relief can be granted.

---

**3.** "§ 185. Suits by and against labor organizations—Venue, amount, and citizenship

"(a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or

without regard to the citizenship of the parties."

**4.** In any case, the prevailing party may assert on appeal any ground in support of his judgment, whether or not that ground was relied upon or even considered by the trial court. *Dandridge v. Williams*, 397 U.S. 471, 475 n.6, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970).

In this case we discern no reason for not following the general rule that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle [the plaintiff] to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

The claim which the Union seeks to establish here is not the ordinary one. While there are numerous reported cases of parties seeking to force or enjoin arbitration or to enforce an arbitration award, it is most unusual to find a party seeking the right to bypass arbitration procedures which it is contractually bound to follow and which are concededly applicable to the particular incidents generating disputes. Although we do not foreclose the possibility that there might exist particularly egregious circumstances which, if alleged, might state a cause of action for relief from a contractual duty to arbitrate, it is our opinion that the allegations of the complaint before us are not sufficient to state such a cause of action.

The Supreme Court has articulated the basis of the national policy in favor of resolving labor disputes according to procedures agreed upon by the parties. The Court has said:

"No obligation to arbitrate a labor dispute arises solely by operation of law. The law compels a party to submit his grievance to arbitration only if he has contracted to do so." *Gateway Coal Co. v. United Mine Workers,* 414 U.S. 368, 374, 94 S.Ct. 629, 635, 38 L.Ed.2d 583 (1974).

The Court noted further:

"The federal policy favoring arbitration of labor disputes is firmly grounded in congressional command. Section 203(d) of the Labor Management Relations Act, 29 U.S.C. § 173(d), states in part:

'Final adjustment by a method agreed upon by the parties is declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective-bargaining agreement.'"

*Id.* at 377, 94 S.Ct. at 636.

In the *Steelworkers* trilogy the Supreme Court emphasized that this policy can only be effectuated if the role of the court is circumscribed by the limits of the arbitration agreement. The Court explained:

"Arbitration is a stabilizing influence only as it serves as a vehicle for handling any and all disputes that arise under the agreement. . . . The function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator." *United Steelworkers of America v. American Manufacturing Co.,* 363 U.S. 564, 567–68, 80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403 (1960).

The Union argues that if the court were to grant the relief which it seeks here, the court would not be repudiating the federal policy favoring arbitration, but rather that it would be reaffirming and effectuating that policy. It is the Union's contention that where an employer wilfully and persistently refuses to conform its behavior to the clear dictates of a prior arbitration award, the Union should not be limited to arbitrating each violation of that award in a separate grievance proceeding where its relief is limited to the payment of damages although it is suffering irreparable harm. We agree that permitting courts to intervene in such a circumstance might, in fact, further the national arbitration policy. We do not, however, agree that the allegations of the complaint filed in this case, although read broadly, are sufficient to permit the union to prove that it finds itself in such an irremediable predicament.

Without attempting to enumerate here all the allegations which would be necessary before a court could undertake to supplant the arbitration process, we only note that the circumstances encompassed by the Union's complaint are

inadequate in at least three important respects. The allegation that "[n]o prior application for the relief requested here has been made," precludes the Union from stating two requirements of such a cause of action. First, the Union has not sought to aggregate its grievances in a single arbitration proceeding challenging the Company's course of conduct in subcontracting. Second, the Union's failure to request from the arbitrator the declaratory and injunctive relief it has asked of the district court makes it unable to allege that such relief is unavailable in arbitration. And, finally, the Union has not alleged that the factual basis of the four arbitration awards in its favor is substantially identical to the facts in the other grievances not yet presented for arbitration.

The grievance procedure clause of the collective bargaining agreement is a broad one covering "[a]ll differences, disputes, and grievances that may arise between the Union and the Company." It further provides: "The arbitrator shall have no power to add to, subtract from, or modify the terms of this Agreement; and shall rule only upon the interpretation and application of the terms of this Agreement." The language of the contract, on its face, does not in any way restrict the scope of grievances which may be presented for arbitration or the remedies within the arbitrator's power to award. The questions of whether this contract would permit the presentation of a grievance regarding a course of conduct, or whether it would permit the award of the remedies which the Union requested of the district court, are not for a court to decide. As the Supreme Court has made clear, questions of arbitration procedure must be left to the arbitrator. *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 557–58, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964).

■ To insist that the Union attempt to process a grievance against a course of conduct seeking the broad relief prayed for in its complaint is not to require a useless act. There is a well-established practice to permit the arbitration of multiple grievances or grievances against policies or patterns of conduct where it is not explicitly prohibited by the collective bargaining agreement.[5] It is also established that arbitrators are to be allowed flexibility in formulating remedies. *Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). As this court has said: "The reported decisions make it abundantly clear that where the contract is not explicit concerning the proper remedy, the arbitrator is given wide latitude in fashioning an appropriate remedy." *Mogge v. District 8, International Association of Machinists,* 454 F.2d 510, 514 (7th Cir. 1971). While it is inappropriate for us to determine whether the contract before us would authorize an arbitrator to grant the declaratory and injunctive relief sought here, such relief is not inherently beyond the capacity of an arbitrator. For example, courts repeatedly have upheld awards requiring companies to return operations and equipment which had been moved to other locations in violation of subcontracting clauses. *Selb Manufacturing Co. v. International Association of Machinists, District 9,* 305 F.2d 177 (8th Cir. 1962); *Atomic Uniform Corp. v. ILGWU,* 86 L.R.R.M. 2331 (S.D.N.Y.1973); *Joint Board of Cloak, Skirt & Dressmakers Union v. Senco, Inc.,* 289 F.Supp. 513 (D.Mass.1968). One commentator has catalogued the variety of other injunctive relief granted in awards:

"Arbitrators have ordered employers to do many specific acts, such as . . . to establish a new system for filling

5. *See* F. Elkouri & E. Elkouri, *How Arbitration Works* 86–88 (rev. ed. 1960); O. Fairweather, *Practice and Procedure in Labor Arbitration* 13–16 (1973); and authorities cited therein. The Supreme Court has recently said that it has no reason to believe that the processing of grievances is inherently limited to the correction of individual cases and that the question of whether a union can grieve against a "pattern or practice" is essentially contractual. *Emporium Capwell Co. v. Western Addition Community Organization,* 420 U.S. 50, 95 S.Ct. 977, 987, 43 L.Ed.2d 12 (1975).

job vacancies where improper methods were used previously and return employees to their former positions; to reclassify employees who were improperly classified; to engage in bargaining; and to post a performance bond. And an arbitrator has ordered a union to undertake immediately to bring into its membership 100 new journeymen and take other steps to meet the critical manpower shortage, as well as to instruct members by letter that they must work overtime." O. Fairweather, *Practice and Procedure in Labor Arbitration* 319–20 (1973) (footnotes omitted). *See also* F. Elkouri & E. Elkouri, *How Arbitration Works* 171 (rev. ed. 1960); Fleming, Arbitrators and the Remedy Power, 48 *Va.L.Rev.* 1199 (1962); Stutz, Arbitrators and the Remedy Power in *Labor Arbitration and Industrial Change,* Proceedings of the 16th Annual Meeting, National Academy of Arbitrators 54 (M. Kahn ed. 1963).

Finally, the Union has not alleged that the factual basis of the four arbitration awards in its favor is so nearly identical to the facts of the pending grievances that the Company's conduct constitutes wilful and persistent disregard of the arbitration awards. The Union alleges that the "pending grievances . . . all involve the same issue of assignment of normal bargaining unit work to outside contractors or to non-bargaining unit employees as has been decided by the arbitrators." This allegation misstates the issue. The critical question here is not what the contract means in the abstract, but whether particular Company work assignments involved work normally performed by employees in the bargaining unit. If the work assignment is normally performed by employees in the bargaining unit and is not included in one of the enumerated exceptions of Section 2 of Article I it would appear beyond question that the work assignment should not be performed by any one other than those normally performing the work. We do not conceive that the Company could contend otherwise on the plain language of the contract.

While the Union's allegation theoretically might entitle it to introduce proof that the four arbitration awards and the more than one hundred pending grievances all arose out of substantially identical fact situations, the copies of the pending grievances, attached to a memorandum submitted in the district court and included in the record on appeal, fail to persuade us that the Union would be able to muster such proof. Each grievance appears to arise out of entirely different facts. They encompass claims of subcontracting the work of employees in tool room, inspection, drill press, punch press and maintenance classifications. Even within classifications, the facts appear to differ from grievance to grievance.

The record does not include copies of the four arbitration awards. The only references to the content of any of the awards in the complaint are the statements that four arbitrators held that the Company is prohibited from subcontracting work normally performed by bargaining unit employees and that one arbitration award held that the collective bargaining agreement prohibits the Company from subcontracting the work of toolroom employees. These statements of the holdings, however, do no more than restate the language of the subcontracting clause of the agreement. The parties do not quarrel as to what the language is. A holding that the Company may not subcontract the work of toolroom employees does not answer the question of whether the construction of Tool # 1 is a task normally performed by the bargaining unit. Nor, would a holding that the manufacture of Tool # 1 may not be subcontracted tell the Company that it could not assign the manufacture of Tool # 2 to workers outside the bargaining unit unless it was clear that Tool # 1 and Tool # 2 differed from one another only in a manner or manners insignificant in determining the applicability of Article I.

■ The Union contends that the arbitration awards constitute interpretations of the collective bargaining agreement with a sort of *res judicata* effect which makes arbitration of the remaining grievances unnecessary. But, notions of *res judicata* are less suited to the informal process of industrial arbitration than to the litigation process, and, to the extent that *res judicata* has been used in arbitration, a strict factual identity has been required.[6] For example, in *UAW, Local 463 v. Weatherhead Co.,* 203 F.Supp. 612 (N.D.Ohio 1962), *aff'd,* 316 F.2d 239 (6th Cir. 1963), the union had earlier arbitrated a grievance regarding the company's subcontracting of the painting of plant machinery and the arbitrator had held that the subcontracting did not violate the contract. The company then engaged a janitorial service company to perform office housekeeping. The union filed a grievance protesting the subcontracting of housekeeping work, but the company refused to arbitrate. The union then brought suit to compel the company to arbitrate. The court ordered arbitration, holding that the earlier arbitration award had no *res judicata* or collateral estoppel effect because the second subcontracting dispute arose out of different facts. Similarly, in the instant case, the arbitration of four subcontracting disputes in which it was determined that particular work assignments violated the contract, does not foreclose an arbitrator's independent application of the same contractual language to other situations.

In sum, the Union has failed to allege at least three circumstances which would be basic to any judicial relief from a contractual duty to arbitrate. The Supreme Court has recently remarked that "one would hardly expect an employer to continue in effect an employment practice that routinely results in adverse arbitral decisions." *Emporium Capwell Co., supra,* 95 S.Ct. at 987. Should the

occasion arise when an employer defies such expectations and deliberately persists in conduct in clear violation of a prior arbitration award, which leaves a union without an appropriate remedy, we will have to face squarely the question of whether such circumstances may constitute an exception to the holding of the *Steelworkers* trilogy. The Union here, however, has not alleged facts sufficient to entitle it to be relieved of its duty to arbitrate. The order of the district court, viewed as a dismissal for failure to state a claim upon which relief can be granted, is affirmed.

Affirmed.

FAIRCHILD, Chief Judge (concurring).

I agree that the union's complaint fails to state a claim for which relief may be granted. It is clear that a court should not consider a labor grievance presented it under § 301(a) of the Labor Management Relations Act which may be subject to arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of the coverage." *United Steelworkers of America v. Warrior and Gulf Navigation Co.,* 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960). The underlying dispute presented in this case concerns the company's alleged pattern and practice of intentional, bad faith violation of the recognition (subcontracting) and arbitration clauses of the collective bargaining agreement. The language of the contract, on its face, does not suggest that the arbitration process is unavailable to consider such a dispute or limit the remedies which the arbitrator could award. Under these circumstances, the dispute must be presented to arbitration. Thus, I would not, in this case, identify any additional requirements necessary for judicial relief.

---

6. *See, e. g., Avco Corp. v. Local 787, UAW,* 459 F.2d 968, 973 (3d Cir. 1972); *Michigan Shippers v. Local 299, Teamsters,* 61 L.R.R.M. 2466, 2470 (E.D.Mich.1966); O. Fairweather, *Practice and Procedure in Labor Arbitration* 338–46 (1973).