**LITTLE SIX CORPORATION, Plaintiff,**

v.

**UNITED MINE WORKERS OF AMERICA, LOCAL UNION NO. 8332, Defendant.**

**Civ. A. No. 81–0335–A.**

United States District Court, W. D. Virginia, Big Stone Gap Division.

March 30, 1982.

James P. Jones, Bristol, Va., for plaintiff.

Gerald F. Sharp, Castlewood, Va., for defendant.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, District Judge.

Plaintiff, Little Six Corporation, brought this suit in the Circuit Court of Dickenson County, Virginia seeking temporary and permanent injunctive relief and a declaration that the defendant, United Mine Workers of America, Local Union No. 8332, is precluded from seeking arbitration on the present grievance by virtue of an arbitrator's award to the Company in a previous grievance procedure. Upon the state court's entry of an order granting temporary injunctive relief, the Union removed the present case from state court pursuant to 28 U.S.C. § 1441. The case is presently before the Court on the Union's motion to dissolve the state court injunction enjoining arbitration. However, it appears to the court that the state court injunction expired of its own terms on January 27, 1981. Therefore, the court will treat this case in the posture of the Company's motion for permanent injunctive and declaratory relief. Original jurisdiction of this action rests with the Court by virtue of Section 301 of the Labor-Management Relations Act of 1947, as amended, 29 U.S.C. § 185.[1] The Court has held an evidentiary hearing in this matter from which the facts of this case were presented by both parties.

Closely related to the grievance which is the subject of this action is a previous grievance filed by certain members of UMWA, District 28, Local 8332, on July 15, 1980. All of the grievants are former long-term employees of Contracting Enterprises, a coal mining enterprise. During the summer of 1980, the management of Contracting Enterprises decided to close a mine that the company had been operating, and each grievant was laid off. Subsequently, the plaintiff, Little Six Corporation hired younger employees of the Contracting Enterprise mine to work at a strip mining site some 30 miles from the Contracting Enterprises mine site. Alleging that Contracting Enterprises and Little Six Corporation were the "same company" under Article XVII,

1. 29 U.S.C. § 185 reads in pertinent part, as follows:

(a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

. . . .

(c) For the purposes of actions and proceedings by or against labor organizations in the district courts of the United States, district courts shall be deemed to have jurisdiction of a labor organization (1) in the district in which such organization maintains its principal office, or (2) in any district in which its duly authorized officers or agents are engaged in representing or acting for employee members.

Section (k) of the National Bituminous Coal Wage Agreement of 1978,[2] the Union contended that the grievants were entitled to seniority rights at the Little Six Corporation mine site upon being laid off at Contracting Enterprises. In its grievance dated July 15, 1980, the Union complained:

"We of L.U. 8332 contend that management is in violation of the 78 coal wage agreement by laying off senior employees and allowing younger men to remain on the job working. The younger men are presently working on the Little Six job, which is the same seniority unit as the contracting job. These men are performing jobs that the senior men are qualified to do. We are asking for the senior men to be placed on the job, and we also request back-pay for this improper layoff."

Record, Ex. F.

In that grievance, Arbitrator Edwin R. Render construed Article XVII, Section (k) of the 1978 Agreement, and denied the Union's grievance. Determining the issue to be "whether Contracting Enterprises and Little Six Corporation are the 'same employer' within the meaning of Article XVII, Section (k) of the Contract," Record, Ex. A at 6, the arbitrator concluded that the companies constituted "two separate and distinct operations", *id.* at 8, thereby precluding relief under the panel provisions of the Contract.

The Company commenced this lawsuit in response to a grievance filed by the members of UMWA, District 28, Local 8332, on July 9, 1981. In late June or early July of the summer of 1981, Little Six Corporation began strip mining operations upon land on or near the area of the abandoned Contracting Enterprises mine site. Testimony presented by the company shows that mine site Permit No. 1213 was issued by the Division of Mining and Reclamation, Com-

monwealth of Virginia, for the old Contracting Enterprises mine site. On the other hand, Little Six Corporation is presently surface mining on a site with Permit No. 3188. There is no conflict in the testimony to the effect that Permit No. 3188 comprises some of the Permit No. 1213 area, although there is dispute as to how much the permit areas overlap each other. However, it is uncontested that Little Six Corporation presently uses a haul road and acreage for a spoil-refuse storage area which previously were incorporated in Contracting Enterprises' Permit No. 1213.

From these facts, the Union argues that the grievants have recall rights in the Little Six Corporation mining operation since some of the present operations of the company occur on or near the old Contracting Enterprises mine site. In its grievance filed July 9, 1981, the Union states:

We contend that the management of the Little Six Corp. is in violation of the 1981 Coal Wage Agreement and Arbitration Review Board decisions concerning successorship. The operation of Little Six is currently mining on the old Contracting Enterprises job. We all have panel rights at this mine. We are asking for the make whole principle.

Record, Ex. B.

Upon the Court's inspection of the 1981 Coal Wage Agreement, it appears that the Union is relying upon the panel rights provisions incorporated in Article XVII, Section (h) of the Agreement and the successorship provisions of Article I of the Agreement.

Pursuant to the Union's attempt to seek arbitration on this grievance, the Company obtained a temporary restraining order in state court and now seeks permanent injunctive relief. The Company argues that the principle of *res judicata* precludes arbi-

---

**2.** Article XVII, Section (k) reads:

Employees laid off in a reduction in force shall at their request be placed on the panel of the other mine or mines of the same Employer in the same UMWA district and the Employee's choice of one additional UMWA district which is geographically contiguous to the UMWA district in which he was employed, provided that Employees laid off after the effective date of this Agreement shall make their requests in writing within the five (5) calendar days following their layoff.

Record, Ex. G.

tration since the Union is allegedly seeking a determination of the same issue decided by Arbitrator Render on the previous grievance of July 15, 1980. The Company contends that the present grievance presents "substantially" the same issue of whether Little Six Corporation is the "same company" as Contracting Enterprises for panel rights purposes.

But for the Render award of October 23, 1980, it appears to the Court that the present controversy would be subject to arbitration under the 1981 Agreement. And further, if the question or issue presented in the current grievance was the subject of the Render award, the Court might be permitted to intervene and enjoin such repetitive grievances. *See United States v. Utah Contr. Co.*, 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966); *United Elec. Radio & Mach. Workers v. Honeywell, Inc.*, 522 F.2d 1221, 1225 (7th Cir. 1975). However, the critical question remains of who is to decide whether the same issues for *res judicata* purposes are involved, the Court or the arbitrator?

Although the Fourth Circuit has not addressed this issue, other Courts have found that "regardless of how clear it may be that the issues decided at a former arbitration proceeding are identical to those subsequently sought to be relitigated, the question of identity of issues, nevertheless, is for the arbitrator and not the court." *T.L.I., Inc. v. General Teamsters Local Union No. 261*, 515 F.Supp. 27, 29 (W.D.Pa.1981).

In a similar case in the Third Circuit, the district court took the initiative and resolved the question of whether the issue presented in an earlier grievance was identical to that before him. Finding that it was not, the district court ordered arbitration. On appeal, the Third Circuit Court of Appeals affirmed, but stated:

> Although we affirm the judgment of the district court, we do so for a different reason: It is the function of the arbitrator, not the court, to decide whether the 'same question or issue' had been the subject of arbitration within the meaning of the collective bargaining agreement.

The union would have a federal court interpret the collective bargaining agreement and, rule as a matter of federal law, that the question or issue presented in the current grievance was the subject of arbitration in 1946. We decline to allocate this interpretive role to the district courts.

*Local 103, Int'l Union of Elec., Radio and Mach. Workers v. RCA Corp.*, 516 F.2d 1336, 1339 (3rd Cir. 1975). *See also Westinghouse Broadcasting v. Local 804, Int'l Alliance*, 616 F.2d 97 (3d Cir. 1980) (reaffirming *Local 103* ); *T. L. I. Inc. v. General Teamsters Local No. 261*, 515 F.Supp. 27 (W.D. Pa.1981); *United Steelworkers of America v. Latrobe Steel Co.*, 452 F.Supp. 63 (W.D. Pa.1978).

Similarly, the Fifth Circuit seemingly adopted this approach in *New Orleans S. S. Ass'n. v. General Longshore Workers*, 626 F.2d 455 (5th Cir. 1980), *appeal pending*, 450 U.S. 1029, 101 S.Ct. 1737, 68 L.Ed.2d 223 (1981). In *New Orleans*, the Company sought an injunction to enforce arbitrators' awards finding that the Union's boycott of Russian cargo ships after the Soviet Union's invasion of Afghanistan violated the no-strike clause in the parties' collective bargaining agreement. The district court not only enjoined the Union's violation of the arbitrators' awards, which were carefully limited to specific vessels, but also enjoined future strikes as to work stoppage connected with the loading or unloading of any grain destined for the Soviet Union. On appeal, the Fifth Circuit Court of Appeals found that the injunction was improper since not limited to restrain strikes that violated the specific arbitration awards as rendered. The court explained:

> The Louisiana district court's judgment does more than merely enforce the awards as written; it applies the arbitration award of arbitrators Caraway and Maxwell, carefully limited by them to one vessel, to other vessels that may hereafter arrive at the Port of New Orleans. In this regard it enjoins future strikes over underlying grievances not subject to arbitration and makes the arbitrator's

award precedential. *Whether the award can be given an effect akin to res judicata or stare decises with regard to future disputes that may arise between the parties, neither the district court nor this court should decide. If the parties do not agree, that issue itself is a proper subject for arbitration.*

*Id.* at 468. (emphasis added).[3]

This is not to say that an arbitrator's decision may never have *res judicata* or collateral estoppel effect. The Supreme Court has indicated that the doctrine of collateral estoppel should apply in appropriate circumstances "to prevent relitigation of factual disputes resolved by an arbitrator." *United States v. Utah Constr. Co.*, 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966) [citing *Goldstein v. Doft*, 236 F.Supp. 730 (S.D.N.Y.1964), aff'd, 353 F.2d 484 (2d Cir. 1965), *cert. denied*, 383 U.S. 960, 86 S.Ct. 1226, 16 L.Ed.2d 302 (1966)]. Various other courts also agree that an arbitration award has *res judicata* and collateral estoppel effect on parties to a collective bargaining agreement who are seeking relitigation of the same grievance or issues in a separate federal court action. *Humphrey v. Moore*, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964); *Davis v. Chevy Chase Financial Ltd.*, 667 F.2d 160 (D.C.Cir. 1981); *Maidman v. O'Brien*, 473 F.Supp. 25 (S.D.N.Y.1979); *Milos v. Spector Freight Sys., Inc.*, 464 F.Supp. 754 (M.D.N.C.1979); *Fur Dressers Union Local 2F v. DeGeorge*, 462 F.Supp. 890 (M.D.Pa.1978); *Marshall v. Coach House Restaurant, Inc.*, 457 F.Supp. 946 (S.D.N.Y.1978); *National Benefit Fund*

*v. Presbyterian Hosp.*, 448 F.Supp. 136 (S.D.N.Y.1978).

However, these cases are different from the present one in that an adverse arbitration decision became final, and the grievant sought to start anew in federal court by seeking readjudication of the same claim in the face of the bar of the final decision in the grievance procedure. Much different interests are affected when a party seeks injunctive relief in federal court on an issue which may properly be the subject of arbitration. While a party cannot be required to submit to arbitration any dispute which he has not agreed to so submit, *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960), this policy must be considered in conjunction with the strong Congressional declaration favoring settlement of labor disputes by arbitration.

[T]he judicial inquiry under § 301 must be strictly confined to the question of whether the reluctant party did agree to arbitrate the grievance or did agree to give the arbitrator power to make the award he made. An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. *Doubts should be resolved in favor of coverage.*

*Id.* at 582–83, 80 S.Ct. at 1352–53. (emphasis added).

Guided by these principles, the Court must necessarily turn to the arbitration provisions of the Agreement of 1981 between

---

**3.** Notwithstanding the Third and Fifth Circuits' stances that determination of identity of issues is to be left to the arbitrator, other courts have stated or implied to the contrary. In *Todd Shipyards Corp. v. Industrial Union of Marine and Shipbuilding Workers*, 242 F.Supp. 606 (D.N.J.1965), the district court found that *res judicata* principles barred arbitration of a second grievance by the Union. The court rejected the Union's suggestion "that *res judicata* is a defense on the merits and one for an arbitrator to determine on hearing of the instant grievance." *Id.* at 611. Although this result supports the Company's contentions in this case, the Court must note that *Local 103* is the controlling law within the Third Circuit

today. A similar result was reached by the district court in *International Chem. Workers Union Local No. 189 v. Purex Corp.*, 427 F.Supp. 338 (D.Neb.), aff'd, 566 F.2d 48 (8th Cir. 1977). Although not addressing the issue of whether it had the power to determine identity of issues, the district court refused to apply *res judicata* to prevent arbitration of a second grievance because the instant grievance involved a different employee and other facts unique to that grievance. *Id.* at 339. Insofar as the district court assumed that it had the power to address the identity of issues question, the Court finds the Third and Fifth Circuits' positions to be the better rule of law.

these parties. First, the Court notes that the arbitration clause, Article XXIII, Section (c), is broadly written.

> Should differences arise between the Mine Workers and an Employer as to the meaning and application of the provisions of this Agreement, or should differences arise about matters not specifically mentioned in this Agreement, or should any local trouble of any kind arise at the mine, an earnest effort shall be made to settle such differences at the earliest practicable time.

> Disputes arising under this Agreement shall be resolved as follows:

Record, Ex. H at 153. After enumerating the various steps of the grievance procedure, including the final step of arbitration, Section (c) concludes: "The arbitrator's decision shall be final and shall govern only the dispute before him." Finally, Article XXVII of the contract severely restricts the access of the Company employer to the courts to resolve disputes and claims which may arise out of the contract.

> The United Mine Workers of America and the Employers agree and affirm that, except as provided herein, they will maintain the integrity of this contract and that all disputes and claims which are not settled by agreement shall be settled by the machinery provided in the "Settlement of Disputes" Article of this Agreement unless national in character in which event the parties shall settle such disputes by free collective bargaining as heretofore practiced in the industry, it being the purpose of this provision to provide for the settlement of all such disputes and claims through the machinery in this contract and by collective bargaining without recourse to the courts.

Record, Ex. H at 161.

In light of these provisions, the Court cannot say "with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. at 582–83, 80 S.Ct. at 1352–53. Consequently, the Court concludes that it is for the arbitrator to decide whether the issues are the same and whether Arbitrator Render's decision governs only the dispute before the arbitrator at that time.

Furthermore, to insist that the Company attempt to process a grievance against the Union for its alleged harassment in filing grievances on a previously decided issue is not to require a futile act. It is not beyond the capacity of an arbitrator to grant the declaratory and injunctive relief sought here where it is not explicitly prohibited by the collective bargaining agreement. *Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960); *United Elec. Radio and Mach. Workers v. Honeywell, Inc.*, 522 F.2d 1221, 1226 (7th Cir. 1975). Therefore, by virtue of the Company's failure to seek arbitration under the contract grievance procedure for the relief requested here, the Company is precluded from asserting an exception to the holding of the Supreme Court's *Steelworkers* trilogy [4], namely where a labor dispute is arguably subject to an arbitration clause, a court must refrain from deciding the controversy and must defer to the arbitrator. *See United Elec. Radio & Mach. Workers*, 522 F.2d at 1226.

Finally, assuming there is an exception to the Company's duty to arbitrate which allows a federal court to grant declaratory and injunctive relief on *res judicata* principles prior to arbitration, the factual basis of the contested grievances must at least be identical. *Oil, Chem. and Atomic Workers v. Ethyl Corp.*, 644 F.2d 1044, 1053–55 (5th Cir. 1981); *United Electrical Radio & Mach. Workers*, 522 F.2d at 1227. Although there is a conflict among the circuits of the degree of identity of issues necessary to invoke *res judicata* principles, either standard precludes a determination that the Compa-

---

4. *United Steelworkers of America v. American Mfg. Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

ny has shown such an identity to this Court. In the Seventh Circuit, a narrow standard of identity is applied.

The Union contends that the arbitration awards constitute interpretations of the collective bargaining agreement with a sort of *res judicata* effect which makes arbitration of the remaining grievances unnecessary. But, notions of *res judicata* are less suited to the informal process of industrial arbitration than to the litigation process, and, to the extent that *res judicata* has been used in arbitration, *a strict factual identity has been required.* *United Elec. Radio & Mach. Workers,* 522 F.2d at 1226. (emphasis added). *See also Fur Dressers Union Local 2F v. DeGeorge,* 462 F.Supp. 890, 892 (M.D.Pa.1978); *International Chem. Workers Union Local No. 189 v. Purex Corp.,* 427 F.Supp. 338, 339 (D.Neb.), *aff'd,* 566 F.2d 48 (8th Cir. 1977). On the other hand, the Fifth Circuit has rejected the Seventh Circuit test and employs a broader test of identity of issues for *res judicata* purposes.

[W]e feel the expression which best characterizes the necessary relationship between the previously condemned conduct and the current actions and which is both capable of being instrumentally defined and supported by logic is material factual identity. Material factual identity exists when there is no difference between the current facts and those giving rise to the prior arbitration award which, when analyzed in light of the mandates of the collective bargaining agreement, would justify an arbitrator's reaching a different conclusion in each of the two cases. If it is beyond argument that there is no material difference between the current facts and the facts on which the prior arbitration award was based (i.e., if there is, beyond argument, material factual identity), then logically, the current dispute would constitute a like violation of the bargaining agreement, as condemned by the previous arbitration award. There would then be no reason to submit the current dispute to arbitration.

*Oil, Chem. and Atomic Workers v. Ethyl Corp.,* 644 F.2d at 1055.

Under either of these tests, the Court feels that identity of issues has not been proven by the Company. In the Union's former grievance of July 15, 1980, Arbitrator Render granted relief to the Company pursuant to his interpretation of "same employer" within the meaning of Article XVII, Section (k) of the Agreement. Record, Ex. A at 2, 6. In the present grievance, the Union attempts to have determined whether the Company is violating the panel rights of the grievants pursuant to the successorship provisions of Article I of the Agreement. Record, Ex. B. Furthermore, the previous grievance addressed the panel rights of the grievants at a separate mine located some 30 miles from their old Contracting Enterprises job site, Record, Ex. A at 6, while the present grievance seeks vindication of the grievants' panel rights at the Contracting Enterprises mining area from which they were laid off. The Court concludes, therefore, that the Company has not shown facts sufficient to entitle it to be relieved of the duty to arbitrate.

Accordingly, the plaintiff Company's motion for declaratory and permanent injunctive relief must be denied.