**LITTLE SIX CORPORATION, Appellant,**

v.

**UNITED MINE WORKERS OF AMERICA, LOCAL UNION NO. 8332, Appellee.**

No. 82–1377.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 7, 1982.

Decided Feb. 22, 1983.

Edward G. Stout, Bristol, Va. (James P. Jones, Penn, Stuart, Eskridge & Jones, Bristol, Va., on brief), for appellant.

Gerald F. Sharp, Castlewood, Va., for appellee.

Before WIDENER, HALL and ERVIN, Circuit Judges.

ERVIN, Circuit Judge:

In July, 1981, three members of Local No. 8332 of the United Mine Workers ("the Union") filed a grievance with the Little Six Corporation ("the Company"), claiming that they had "panel rights" (employment rights) at a mine the Company was operating in Dickenson County, Virginia. The Company responded by obtaining from a state court a temporary injunction forbidding pursuance of the grievance. The Union then removed the case to federal court pursuant to 28 U.S.C. § 1441 and 29 U.S.C. § 185. An evidentiary hearing was held on the Union's motion to dissolve the injunction. The district court, noting that the state court's order already had expired, held that the National Bituminous Coal Wage Agreements of 1978 and 1981 ("the Contract") required the Company to submit the dispute to arbitration, and therefore denied the Company's motion for injunctive and declaratory relief. We affirm.

## I.

In June, 1980, Contracting Enterprises, a mining company in Dickenson County, Virginia, ceased operations and terminated all its employees. Several of the younger employees were hired by the Company to work at a mine about thirty miles from the Contracting Enterprises site. Senior Union members responded by filing a grievance contending that the Company and Contracting Enterprises were in fact the same employer and that the Company was therefore violating their panel rights based on seniority. The Company denied the claim and the matter proceeded to arbitration. The Union presented evidence that the two companies had a substantially integrated operation and that they shared the same executive officer. Nevertheless, the arbitrator denied the grievance because he concluded that the two companies were in fact separate and distinct operations.

In early summer, 1981, the Company began mining operations on or near the old Contracting Enterprises site. Three senior Union members once again filed a grievance, this time arguing that they were entitled to panel rights at the old site because the Company was the successor-employer to Contracting Enterprises.

In federal district court, the Company contended that it was not obligated to arbitrate because the issue presented by the current grievance is substantially the same as that decided by the arbitrator in 1980. The Union maintained, and the district court agreed, that the preclusive effect of the 1980 arbitration award was itself arbitrable. The court, as an alternate ground for its decision, also concluded that the Company had not shown the identity of issues necessary to support applying the bar of *res judicata*. 537 F.Supp. 216 (W.D.Va. 1982).

## II.

Article XXVII of the 1981 Contract under which the current grievants are seeking to proceed states that

The United Mine Workers of America and the Employers agree and affirm that, except as provided herein, they will maintain the integrity of this contract and that all disputes and claims which are not settled by agreement shall be settled by the machinery provided in the "Settlement of Disputes" Article of this Agreement unless national in character in which event the parties shall settle such disputes by free collective bargaining as heretofore practiced in the industry, it being the purpose of this provision to provide for the settlement of all such disputes and claims through the machinery in this contract and by collective bargaining without recourse to the courts.

The Employer, however, expressly authorizes the Union to seek judicial relief, without exhausting the grievance machinery, in cases involving successorship.

The autonomy of the settlement resolution "machinery" (the grievance procedure culminating in arbitration) is specifically guaranteed by Article XXIII(c) which states that "[t]he arbitrator's decision shall be final and shall govern only the dispute before him."

It is the clear intent of the parties to the Contract to avoid resorting to litigation in all matters arising under it: "differences . . . as to the meaning and application of the provisions of this Agreement, or . . . about matters not specifically mentioned in this Agreement . . . [and] any local trouble of any kind" are all to be resolved by the Contract's "machinery." Article XXIII(c). In the *Steelworkers Cases*, the Supreme Court severely restricted judicial intervention into arbitration machinery established by labor-management agreements, stating that the parties should be required to arbitrate "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–583, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1409 (1960). In light of this special canon of labor contract interpretation, it would seem that this issue, like any other arising under the Contract, is arbitrable.[1]

The Company responds that the question here is not a substantive labor dispute, but rather a disagreement over the effect of the 1980 arbitral award. The *Steelworkers Cases'* solicitude for arbitration, according to the Company, indicates that the district court should have decided the question of the award's *res judicata* effect, and decided it in the Company's favor. Only thus, the Company maintains, can the autonomy mandated for arbitration by the Supreme Court and agreed to by the parties to the 1978 and 1981 Contracts be provided. The Company cites several cases that it claims support its position.

The district court in *Todd Shipyards Corp. v. Industrial Union of Marine & Shipbuilding Workers*, 242 F.Supp. 606 (D.N.J. 1965), held that the preclusive effect of an earlier arbitral award was a question for judicial and not arbitral resolution, substantially for the reasons, autonomy and finali-

ty, advanced by the Company here. The Third Circuit, however, subsequently clearly repudiated the Company's position and the rationale of *Todd Shipyards*. That court has stated that "[i]t is the function of the arbitrator, not the court, to decide whether the 'same question or issue' had been the subject of [previous] arbitration." *Local 103, Int'l Union of Elec., Radio and Mach. Workers v. RCA Corp.*, 516 F.2d 1336, 1339 (3d Cir.1975); *accord, Westinghouse Broadcasting Co. v. Local 804, Int'l Alliance*, 616 F.2d 97 (3d Cir.1980).

*Panza v. Armco Steel Corp.*, 316 F.2d 69 (3d Cir.1963), *cert. denied*, 375 U.S. 897, 84 S.Ct. 174, 11 L.Ed.2d 125 (1963), is factually distinguishable from the present controversy. It involved an attack on a previous arbitral award as fraudulently obtained. The appeals court affirmed the district court's dismissal on *res judicata* grounds. The Third Circuit's subsequent decisions in *Local 103* and *Westinghouse Broadcasting* demonstrate the fallacy of the Company's reliance on *Panza*.

In the third case cited by the Company, *Int'l Chemical Workers Union Local No. 189 v. Purex Corp.*, 427 F.Supp. 338 (D.Neb. 1977), *aff'd*, 566 F.2d 48 (8th Cir.1977), the district court assumed, without addressing the issue, that it could decide whether an arbitral award should be accorded preclusive effect. The court therefore determined that, in the absence of "a strict factual identity," *res judicata* would not apply, and ordered the parties to submit the dispute to arbitration. 427 F.Supp. at 339. The appeals court's one paragraph *per curiam* simply stated that it was resolving a "single, tightly-drawn issue: Is a party to a collective bargaining agreement bound by an arbitrator's interpretation of a clause in an identically-worded prior contract although that interpretation was dictum?," 566 F.2d at 49, and affirmed the lower court's order. The narrow proposition thus endorsed by the Eighth Circuit is obviously inapplicable to this case.

---

1. There is one exception to the exclusiveness accorded arbitration by the Contract: in successorship disputes (like the present case) the *Union* is authorized to bypass the grievance machinery and seek judicial relief. *See* Article XXVII. This exception is plainly of no help to the Company.

Not only do the Company's authorities wilt under examination, but there is solid, well-reasoned case law holding that the preclusive effect of a prior arbitral award is itself a question for arbitration. In addition to the Third Circuit cases mentioned above, the Fifth Circuit has stated that "[w]hether [a prior] award can be given an effect akin to *res judicata* or *state decisis* with regard to future disputes ... neither the district court nor this court should decide. If the parties do not agree, that issue itself is a proper subject for arbitration." *New Orleans S.S. Ass'n v. General Longshore Workers,* 626 F.2d 455, 468 (5th Cir. 1980), *aff'd sub nom. Jacksonville Bulk Terminals, Inc. v. Int'l. Longshoremen's Ass'n.,* —— U.S. ——, 102 S.Ct. 2673, 73 L.Ed.2d 327 (1982). The First Circuit also has endorsed this position in a recent decision. *See Boston Shipping Ass'n v. Int'l. Longshoremen's Ass'n,* 659 F.2d 1 (1st Cir.1981). The district court below in the present case considered the question and adopted the view of the Third and Fifth (and now First) Circuits. We agree.

The core to the Company's argument is the claim that unless the courts prevent the Union from pressing this grievance, the finality of the 1980 award will be undermined. But this is an unwarranted speculation. "Open to the Union [and, of course, to the Company], before the arbitrator, is the same contention it has presented to the courts, *i.e.,* that the 'same question or issue' was previously 'the subject of arbitration.' So viewed, finality, consistent with the provisions of the agreement, will be preserved." *Local 103,* 516 F.2d at 1341.

It is of course true that numerous cases support the application of *res judicata* or collateral estoppel when the losing party in an arbitration proceeding seeks to reopen its case in federal court. *See, e.g., Milos v. Spector Freight Systems, Inc.,* 464 F.Supp. 754 (M.D.N.C.1979). These cases are clearly distinguishable. Here the *victorious* party in the prior arbitration has gone into court in an attempt to foreclose arbitration. Cases like *Milos* stand only for the proposition that courts will hold the parties to a labor contract to their bargain. Here it is the Company, not the Union, which is seeking to escape from its agreement to arbitrate disputes.

### III.

We hold that the district court correctly decided that the question of the preclusive effect of the 1980 arbitration award is itself arbitrable. We therefore need not, and should not, reach the question of the 1980 arbitration's present effect. The decision of the district court is affirmed.

AFFIRMED.