**MIDWEST LODGE NO. 2063, INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, Plaintiff,**

v.

**ADMIRAL DIVISION OF MAGIC CHEF, INC., Defendant.**

No. 84–1068.

United States District Court, C.D. Illinois, Peoria Division.

July 13, 1984.

Ronald Henson, Galesburg, Ill., for plaintiff.

Norman A. Quandt, Atlanta, Ga., Eugene L. White, Peoria, Ill., for defendant.

ORDER

MIHM, District Judge.

Currently pending before the Court are Defendant's motion to dismiss and Plaintiff's motion for summary judgment.

Plaintiff filed suit pursuant to § 301 of the Labor Management Relations Act, 29 U.S.C. § 185. Plaintiff Union alleges that Defendant Employer unilaterally instituted a staggered schedule of lunch and break periods, known as tag relief, in the paint shop and that that action violated the collective bargaining agreement, a letter of understanding between the Union and Em-

ployer, and an arbitrator's award made by arbitrator Hy Fish in 1982. The arbitration award concerned institution of tag relief for the extruder operators in Department 901 of the main plant. The arbitrator held that the company was in violation of the collective bargaining agreement when it introduced tag relief in Department 901. Hy Fish was a permanent arbitrator in 1982 and remains as such today.

The Defendant's paint shop facility was opened in January of 1984 in a building physically contiguous to the older "main plant", or Plant 1. The parties' collective bargaining agreement allows lunch periods in Plant 2 on a tag relief basis, thus prohibiting such relief in the main plant only by implication. Since the issuance of the Hy Fish award, the parties have negotiated a new collective bargaining agreement but the language affecting tag relief remained unchanged.

The employer alleges that shortly after the Fish award was issued, members of the union voluntarily reinstated an ad hoc form of staggered breaks and lunch periods in the main plant to accommodate their own preferences. Defendant also maintains that in subsequent contract negotiations it attempted to discuss the need for tag relief, but the union refused to seriously discuss those issues.

There is some controversy as to what steps were taken to grieve or arbitrate the present dispute. Defendant asserts that the union actually filed a step one grievance in January of 1984 but subsequently abandoned that grievance in favor of filing this lawsuit. Plaintiff, on the other hand, contends that it was the Defendant that failed to timely respond to the individual employee's grievance at step one and repeatedly requested the Union to pursue informal renegotiations of the tag relief terms of the agreement, while asking the Union to put all other actions on hold.

Defendant filed a motion to dismiss and Plaintiff moved for summary judgment. Defendant argues that the statute of limitations precludes enforcement of the 1982 Hy Fish award. Defendant contends that although Illinois provides no specific time to frame an action to enforce or confirm an arbitration award, the most closely analogous state statute of limitations (to vacate an arbitration award) is 90 days. Ill.Rev.Stat., ch. 10, § 112 (1983). Further, Defendant states that federal precedent suggests a six month statute of limitations controlling labor related causes of action. See *DelCostello v. Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). These statutes of limitations, however, do not contemplate a cause of action like that in the case at bar. Here, prospective enforcement of a prior award is sought in relation to a new factual situation. With respect to implementation of tag relief in the new paint shop, Plaintiff has timely filed its complaint.

Defendant moves to dismiss the complaint on the basis that the Plaintiff has failed to process the dispute through the grievance and arbitration provisions mandated under the parties' agreement and that failure to exhaust those remedies precludes suit under § 301. The parties' current collective bargaining agreement contains a broad arbitration provision.

Defendant further contends that the prior award of Arbitrator Hy Fish has no significance insofar as the instant suit is concerned since that award is limited on its face to events surrounding the company's 1981 action establishing a staggered lunch schedule for the extruder operators in Department 901, while the present dispute arises out of totally distinct facts involving a major physical and operational change in the company's paint department.

Plaintiff argues that the case is appropriate for summary judgment in that the material facts are undisputed. Thus, Plaintiff argues that the Court is faced with a pure question of law: Is it clear beyond doubt that Admiral's unilateral institution of "tag relief" in department 501 (paint shop) violated the Hy Fish Arbitration Award which prohibited "tag relief" except in plant 2? Plaintiff asserts that the union exhausted all necessary contractual remedies regarding the propriety of tag relief in the 1982

arbitration proceedings and that a re-arbitration of this issue would be duplicitous.

The Union places its primary emphasis on *Oil, Chemical and Atomic Workers International Union v. Ethyl Corporation,* 644 F.2d 1044 (5th Cir.1981). In that case, the union, representing hourly employees since 1952, had over the years negotiated contracts which consistently prohibited the use of supervisors in hourly-rated jobs. In 1970, conflicts arose when a supervisor performed hourly work, resulting in a 1973 arbitration award ordering Ethyl to "desist from violations such as that involved here" and to "hereafter ... desist from like violations". In July of 1979, Ethyl put 16 supervisors in one area of the plant to perform hourly-rated work. The union filed a § 301 LMRA action seeking prospective enforcement of the 1973 arbitration award to enjoin this conduct. The district court dismissed the complaint at the close of plaintiff's case-in-chief, stating that the plaintiff had not shown a "strict factual identity" between the facts on which the arbitrator's award was based and the circumstances relied upon by the plaintiff to show the non-compliance in 1979. The Fifth Circuit, on appeal, rejected the "strict factual identity" test and reversed the district court decision. The Fifth Circuit held that "... conduct which is substantially similar to the actions condemned in the prior award must be prohibited in order to properly enforce that award." 644 F.2d at 1050. The Fifth Circuit found that the necessary relationship between the previously condemned conduct and the current actions is "material factual identity" which exists when:

> "there is no difference between the current facts and those giving rise to the prior arbitration award which, when analyzed in light of the mandates of the collective bargaining agreement, would justify an arbitrator's reaching a different conclusion in each of the two cases." 644 F.2d at 1055.

The Fifth Circuit noted that its decision in *Ethyl* could be harmonized with the Seventh Circuit's decision in *United Electrical Radio and Machine Workers v. Honeywell, Inc.,* 522 F.2d 1221 (7th Cir.1975).

*Honeywell* acknowledged that federal court enforcement of a prior arbitration award might, in some circumstances, further the national policy favoring arbitration. 552 F.2d at 1225. The plaintiff in *Honeywell,* however, failed to introduce evidence of a prior arbitration decision or to inform the court of the facts giving rise to the prior arbitration decision or the scope of the arbitration decree. The Seventh Circuit stated that the plaintiff had failed to allege that "the factual basis of the four arbitration awards in its favor is substantially identical to the facts in the other grievances not yet presented for arbitration." 522 F.2d at 1226. These omissions were fatal to the union's case.

Unlike the arbitration award in *Ethyl,* which expressly forbade "like violations" of the provisions of the collective bargaining agreement, the Hy Fish award in the case at bar makes no reference to "like violations". This fact alone, however, does not preclude prospective application of the Fish award. In *Boston Shipping v. International Longshoremen's Ass'n,* 659 F.2d 1 (1st Cir.1981), the Court held that although the arbitration award was not expressly directed at future "like violations" and although a new collective bargaining agreement had been entered into since the prior arbitration award, the arbitration award could still be given prospective effect. The court ruled that since the subject of the award was not a discrete historical incident but rather the definition of a physical location in the plant, the award was inherently prospective. Similarly, Plaintiff argues that the Fish arbitration award merely construes the meaning of a contractual clause rather than deciding a clear factual matter since the dispute between the union and Admiral focuses upon the construction of the contract language prohibiting "tag relief". See also *Fournelle v. NLRB,* 670 F.2d 331 (D.C.Cir.1982), in which the court held that the NLRB should have given effect to a prior arbitral decision, which interpreted the collective bargaining agreement as allowing greater punishment of union officials who engaged in unauthorized strikes, even though the

contract did not explicitly provide that an arbitrator's decision would be precedentially binding in later arbitration.

There appears to be no uniformity among the circuit courts as to the standard to be applied for prospective enforcement of an arbitration award. The Third Circuit, for example, in *United Mine Workers, District 5 v. Consolidated Coal Co.*, 666 F.2d 806, 811 (3rd Cir.1981), stated that a federal court:

"must be able to say 'with positive assurance' that the award or settlement was intended to cover the dispute. If the Court has any doubt, the parties should be returned to their grievance procedure and arbitration, for it is an arbitrator, and not the Court, who is to decide whether the same issue has already been resolved in an earlier proceeding."

In *Local 103, Int'l Union of Radio & Machine Workers v. RCA Corp.*, 516 F.2d 1336 (3rd Cir.1975), the same court noted that:

"(i)t is the function of the arbitrator, not the court, to decide whether the 'same question or issue' had been the subject of arbitration within the meaning of the collective bargaining agreement.

The Union would have a federal court interpret this collective bargaining agreement and rule, as a matter of federal law, that the question or issue presented in the current grievance was the subject of arbitration. We decline to allocate this interpretive role to the district courts. 576 F.2d at 1339."

Other case authority has supported judicial deference to the arbitration process in assessing the meaning and impact of a prior arbitration award. See, e.g., *Little Six Corp. v. Mine Workers Local 8332*, 701 F.2d 26 (4th Cir.1983); *Westinghouse Elevators v. S.I.U.*, 583 F.2d 1184 (1st Cir. 1978); *Riverboard Casino, Inc. v. Executive Board*, 578 F.2d 250 (9th Cir.1978).

In contrast to the Third Circuit's approach, the Fifth Circuit in *Ethyl* advocated a test of "substantive similarity" or "material factual identity". 644 F.2d at 1050, 1055. Plaintiff urges that in a case as clear cut as this one, the Court should

prospectively enforce the Fish award even if it adopts the stricter standard of *Consolidated Coal* and similar cases.

There is no dispute that both the Hy Fish award and the present complaint address the issue of tag relief in an area outside of Plant 2. The relevant contract language has remained unchanged since the 1982 award, and that award was rendered by a permanent arbitrator who remains in that position today. Some of the arguments asserted by the employer in this proceeding are the same as those asserted in the 1982 arbitration proceeding. Other arguments and factual circumstances are different. The paint shop, for example, is a new operation. In addition, the Defendant employer alleges acquiescence by the Union in voluntary adoption of tag relief by the Plant 1 employees prior to the time a letter of understanding regarding that issue was entered into by the parties. The Defendant also attaches some relevance to discussions in 1983 and 1984 between the employer and the union regarding tag relief in 1983 and 1984. The extent and relevance of those discussions is disputed by the Union.

■ In the absence of language in the prior arbitration award directing prospective application, the issue of whether the award should be prospectively applied is appropriately one for an arbitrator to decide at least where, as here, there are intervening changes in facts which are arguably significant. Where enforcement requires interpretation of an award, the proper course is to remand to an arbitrator for clarification regardless of the probability that a future arbitrator would follow the previous decision. *Boston Shipping v. Int'l Longshoremen's Ass'n*, 659 F.2d at 3. Where ambiguities exist and the prospective application of a previous award is questioned, this Court will not substitute its judgment for that of an arbitrator. Since the Court cannot say "with positive assurance" that the employer's institution of tag relief in the new paint shop violated the 1982 arbitration award concerning tag relief for the extruder operators in Department 901, even though both departments

are located outside Plant 2, it declines to give prospective application to the Fish award.

■ At the conclusion of the hearing, the Union requested that the Court, in its order directing that the parties proceed to arbitration, specify that the case be referred to Arbitrator Hy Fish. The parties thereafter submitted written authority with regard to the appropriateness of such a procedure. The cases cited by the Union, *Baldwin Piano and Organ Co. v. Int'l Chemical Workers Union,* 564 F.Supp. 1262 (N.D.Mass.1983); *Watauga Rayon Workers Union Local 2207 v. Beaunit Fibers,* 424 F.Supp. 143 (E.D.Tenn.1976); and *Printing Pressman's Union No. 135 v. Cello-Foil Products, Inc.,* 459 F.2d 754 (6th Cir.1972), do not dictate referral to the original arbitrator in circumstances like those of the case at bar. The Court, while not ordering that such be done, believes that it would be preferable for Arbitrator Fish to hear this case, and urges the parties to follow its recommendation.

Several days after the Court's oral ruling on Defendant's Motion to Dismiss, the Union requested that this Court stay its proceedings pending arbitration, pursuant to 9 U.S.C. § 3. The Court finds Defendant's arguments opposing such a stay persuasive.

In accordance with the foregoing,

1. Defendant's Motion to Dismiss is GRANTED;

2. Plaintiff's Motion for Summary Judgment is DENIED;

3. The parties are directed to proceed with the processing of the paint shop tag relief grievance through the grievance procedure of their collective bargaining agreement through, if necessary, final and binding arbitration;

4. Plaintiff's request for a stay of this Court's proceedings pending arbitration is DENIED;

5. Each party is to bear its own fees and costs.