UNITED PAPERWORKERS INTERNA-
TIONAL UNION LOCAL 1206,
Plaintiff-Appellant,

v.

GEORGIA PACIFIC CORPORATION;
GYPSUM DIVISION,
Defendant-Appellee.

No. 85–3746.

United States Court of Appeals,
Sixth Circuit.

Submitted June 9, 1986.

Decided Aug. 12, 1986.

Daniel J. Picard, Noah E. Powers, II, Middletown, Ohio, for plaintiff-appellant.

James C. Hoover, Clark, Paul, Hoover, & Mallard, Atlanta, Ga., James L. Matte, for defendant-appellee.

Before KEITH, KRUPANSKY and BOGGS, Circuit Judges.

KEITH, Circuit Judge.

The United Paperworkers International Union Local 1206 ("Union") appeals from an order of the district court granting summary judgment for Georgia-Pacific Corporation ("Georgia-Pacific"), Gypsum Division. The district court held that the arbitrator's award had not been violated by Georgia-Pacific. For the following reasons, we affirm.

## I.

The Union and Georgia-Pacific entered into a collective bargaining agreement ("Agreement") in February 1983 which was scheduled to continue in effect until February 1986. In July 1983, a grievance was filed by three employees, classified as Stock Preparation Helpers, pursuant to an allegedly improper assignment of an employee as a vacation replacement. The employees grieved because the employee who was improperly assigned was a laborer who earned 28 extra paid hours when he filled in as a Stock Preparation Helper to cover the vacation absence of the fourth Stock Preparation Helper.

On March 23, 1984, the arbitrator issued his award and found that the Union and Georgia-Pacific had an "extra work" entitlement preference that required the employer to first offer overtime to other Stock Preparation Helpers. The arbitrator found that Georgia-Pacific violated the Agreement, when during the workweek of July 4, 1983, it failed to assign certain stock preparation department work performances to employees of that department. The arbitrator consequently directed Georgia-Pacific to compensate the grievants appropriately.

Pursuant to the instant action, on July 30, 1984 the Union filed a complaint asserting that Georgia-Pacific had willfully failed and refused to carry out the terms of the award. Specifically, the union asserted that since the filing of the original grievance and following the arbitration award, approximately thirty grievances were filed against Georgia-Pacific for substituting lower paid employees ("laborers") from different job classifications for vacationing workers. Georgia-Pacific filed a motion for summary judgment. The district court held that Georgia-Pacific had complied with the arbitrator's previous award and that the issue of whether the prior arbitration award was intended to cover the present grievances is a contractual interpretation question which should be decided by an arbitrator and not the courts.

## II.

The Union argues on appeal that the district court incorrectly determined that the prospective application of the arbitration award was itself a contractual interpretation question, which must be decided first by an arbitrator. Since federal policy favors private settlement of suits involving interpretation of collective bargaining agreements, we disagree. *See United Steelworkers of America v. Enterprise Wheel & Car Corporation*, 363 U.S. 593, 598–99, 80 S.Ct. 1358, 1361–62, 4 L.Ed.2d 1424 (1960).

Where there are intervening changes in facts which are arguably significant and there is no language in the prior award directing prospective application, the issue of whether the arbitrator's award should be prospectively applied is appropriately one for the arbitrator to decide. *Midwest Lodge No. 2063 v. Admiral Division of Magic Chef, Inc.*, 587 F.Supp. 1563, 1566 (C.D.Ill.1984); *see Boston Shipping Association, Inc. v. International Longshoremen's Association*, 659 F.2d 1 (1st Cir. 1981). The Fifth Circuit has clarified the judicial role under this principle, placing the initial burden on the union to "establish ... that the current conduct inarguably falls within the prohibition that was the subject of the previous arbitration award." *Oil, Chemical and Atomic Worker's International v. Ethyl Corp.*, 644 F.2d 1044, 1051–52 (5th Cir.1981). Once the Union "establishes" the "inarguable" prohibition, the burden falls on the employer to establish an exception. *Id.* Where factual similarities are not "inarguable," however, the courts should abstain from taking the pros-

pectivity issue from the arbitrator. *Id.* at 1051.[1]

Establishing that a prior arbitration award "inarguably" prohibits subsequent employer conduct does not depend upon express language in the award itself. As the First Circuit recognized in *Boston Shipping Association, Inc. v. International Longshoremen's Association*, 659 F.2d 1 (1st Cir.1981), when a past arbitration award deals with the definition of a physical location in the plant, its prospective effect as to other grievances involving that definition is "inherent." *Id.* at 4. Here, the Union argues that the prior arbitration award was inherently prospective because conduct which merely differs in form from the actions, which were the subject of the prior arbitration award, cannot serve as an excuse for instituting new arbitration proceedings. *Oil, Chemical Atomic Workers International v. Ethyl Corp.*, 644 F.2d at 1050. However, unlike *Ethyl Corp.*, the arbitrator in this case did not require Georgia-Pacific to desist from violations such as those involved here, nor did the arbitrator require Georgia-Pacific to hereafter desist from "like violations." The court in *Ethyl Corp.* specifically analyzed the enforcement of a prior arbitration award that expressly forbade "like violations." We believe the district court was correct in holding that the arbitrator's award contains no such language.

In interpreting the Agreement provision, the arbitrator determined that:

1.   The agreement required the company to give first preference to employees "within the classification in which the extra work normally would be performed," whenever the company offered "extra work." § 10.082.

2.   "Extra Work" meant more than overtime work.

3.   The situation where (a) a "stock preparation helper" was on vacation; and (b) twenty-eight overtime hours that normally would have been assigned to the vacationing worker were assigned instead to a laborer, constituted an assignment of "extra work."

4.   The failure to first offer such "extra work" to another "stock preparation helper," violated the Agreement.

That decision did not purport to decide more than the single grievance before the arbitrator, and did not mention any prospective effect.[2] We find that the pending grievances contain an important factual distinction from the earlier award: in the pending cases, no additional weekly work is performed by the substitute laborer, who works exactly the same weekly schedule as the would-be substitutes. In the earlier case, the substitute laborer worked an additional twenty-eight weekly hours of overtime. Not only were twenty-eight weekly hours assigned in contravention of the Agreement, the earlier award does not require the company to permit double-shifts by workers in the same job classification every time a worker goes on vacation. Again, the grievance ruled on by the original arbitrator requested relief because the "[e]mployee from another department was given overtime of 28 extra hours," and requested only twenty-eight more paid hours as relief. Certainly, this casts some doubt on whether applicability of the prior award to these grievances is "inarguable." The arbitrator awarded only "appropriate" relief, which we find amounted to no more than the twenty-eight hours requested by the Union. Thus, it does not appear "inarguable" that the Georgia-Pacific post-

---

**1.**   Other circuits likewise have concluded that a high degree of factual identity must be established before the court should assume an arbitrator's award is impliedly prospective. *E.g., Fournelle v. .N.L.R.B.*, 670 F.2d 331 (D.C.Cir. 1982); *United Mine Workers, District 5 v. Consolidation Coal Co.*, 666 F.2d 806 (3rd Cir.1981).

**2.**   However, the arbitrator did reject Georgia-Pacific's argument that the parties had altered the plain language of the agreement by "practical construction," despite a finding that the company had previously substituted laborers for higher-classified vacationing workers. Thus refined, the issue here is whether the arbitrator's decision "inarguably" prohibits future failure to offer all vacation-time substitute work first to workers in the same job classification as the vacationing employee.

award actions involve the same material facts as those for which relief was awarded.

Accordingly, we affirm the decision of the Honorable Herman J. Weber granting summary judgment to defendant.