848 F.2d 192
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 LOCAL UNION 1785, UNITED MINE WORKERS OF AMERICA, Plaintiff-Appellant,
v.
QUARTO MINING COMPANY, Defendant-Appellee.
 
 No. 87-3027.
 United States Court of Appeals, Sixth Circuit.
 May 4, 1988.
 Before KEITH, WELLFORD and DAVID A. NELSON, Circuit Judges.
 PER CURIAM.
 
 
 1
 This appeal raises the legal question whether a judge or an arbitrator should determine the res judicata effect of a prior arbitration award. Local 1785 of the United Mine Workers ("the Union") filed suit to enjoin actions by Quarto that the Union claims an arbitrator previously found to violate their collective bargaining agreement. The district court dismissed the suit, finding that arbitration was the proper method of determining whether the prior award had a res judicata effect.
 
 
 2
 Quarto is engaged in the mining and selling of bituminous coal, and the Union represents the hourly production and maintenance employees who work at one of Quarto's mines. Relations between the Union and Quarto are covered by a 1984 collective bargaining agreement which establishes a several-step dispute resolution mechanism that applies to "[d]isputes arising under this Agreement" and culminates in arbitration. The 1984 Agreement also contains the following provision:
 
 
 3
 All decisions of the Arbitration Review Board rendered prior to the expiration of the National Bituminous Coal Wage Agreement of 1978 shall continue to have precedential effect under this Agreement to the extent that the basis for such decisions have not been modified by subsequent changes in this Agreement.
 
 
 4
 Article XXIII(k).
 
 
 5
 One of the decisions that was given precedential effect by the above Article XXIII(k) provision is Arbitration Review Board Decision No. 78-24 ("A.R.B. 78-24"), which provided that prior arbitration decisions shall be given res judicata effect as to subsequent grievances arising between the same parties, at the same operation, on the same fact situation, and involving the same issues of contract interpretation and application as presented in the former grievance decided by the prior award. ARB 78-24 applies unless certain limited situations are shown, even though the arbitrator considering the subsequent grievance would not have reached the same result if he had been presented with the prior case, but "[w]here the arbitrator is clearly and convincingly persuaded by the evidence and arguments ... that a prior award is so plainly and palpably erroneous that it should not be applied, he may refuse to apply the principle of arbitral res judicata." ARB 78-24 proceeds to list four situations in which the arbitrator may find a prior award to be "plainly and palpably erroneous."
 
 
 6
 The particular disputes from which this suit arose were the result of Quarto's decision in 1984 to start producing coal on Saturdays. The 1984 Agreement provides, with regard to Saturday work, that "[a]ll Employees at mines which produce coal six (6) days per week shall be given a fair and equal opportunity to work on each of such six (6) days." Article IV(d)(3). Following Quarto's scheduling of a partial complement of workers for Saturday work in early 1984, an employee filed a grievance claiming that Quarto's failure to schedule fewer than all employees for Saturday work violated the "fair and equal opportunity" provision. This grievance led to arbitration, and Arbitrator Rimmel determined initially that Quarto could schedule less than a full complement to produce coal on Saturdays. In a supplemental award dated November 8, 1984, however, Rimmel found further that when Quarto chose to produce on Saturdays, it had to ensure that all employees received a "fair and equal opportunity" to do Saturday work and that in so ensuring the company had to "employ a procedure that affirmatively determines employee interest in working this type of premium day."
 
 
 7
 In October 1985, when Quarto scheduled workers for Saturday partial production, the number of workers who expressed interest in working on Saturdays was insufficient to meet Quarto's production needs, so the company also mandatorily scheduled employees who had not volunteered to work in order to get the needed complement. As a result, two nonvolunteering employees filed grievances raising the issue of whether only those employees who volunteered to work on partial production Saturdays could be scheduled to work on those days. These grievances also proceeded to arbitration, and Arbitrator Stone determined that he was bound by Arbitrator Rimmel's supplemental decision. Stone interpreted that decision to mean that Quarto could schedule only those employees who expressed interest in working on Saturdays, applying A.R.B. 78-24 to hold that Rimmel's decision was entitled to res judicata effect. Stone's award ordered remedies, but only for the two grievants involved.
 
 
 8
 Quarto has filed suit in another federal court to vacate Stone's award and has continued to schedule nonvolunteering employees in addition to all volunteering employees for work on partial production Saturdays. When Quarto mandatorily scheduled nonvolunteering employees for work on Saturday, November 8, 1986, the Union filed this action requesting the district court to enforce Arbitrator Stone's award so as to preclude Quarto from mandatorily scheduling any employees for partial production work on Saturdays. The district court decided that whether preclusive effect was to be accorded Stone's arbitration decision was a question for arbitration and dismissed the suit.
 
 
 9
 In determining that the arbitral res judicata issue should be arbitrated rather than judicially resolved, the district court relied chiefly on the presumption that all disputes under a collective bargaining agreement that contains an arbitration clause should be resolved by arbitration, United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83 (1960), and on cases holding that the binding effect of a prior arbitration award is itself an arbitrable issue. See Little Six Corp. v. United Mine Workers of America, Local Union No. 8332, 701 F.2d 26 (4th Cir.1983); Local 103 of the International Union of Electrical, Radio, and Machine Workers v. RCA Corp., 516 F.2d 1336 (3d Cir.1975). Appellant argues that the court itself properly should have found the prior awards binding under Local 1206 v. Georgia Pacific Corp., 798 F.2d 172 (6th Cir.1986), and Oil, Chemical, and Atomic Workers International v. Ethyl Corp., 644 F.2d 1044 (5th Cir.1981). In Ethyl, the Fifth Circuit considered when a court may apply the principle of arbitral res judicata. The court held that if the employer's current conduct is not "arguably permissible" under the relevant provision of the collective bargaining agreement interpreted by the prior arbitration award, then a court can find that the current conduct is not materially different from the previously condemned actions and thus is precluded by the prior award. 644 F.2d at 1051. This court adopted the Fifth Circuit's test in Georgia Pacific, but at the same time observed that "[w]here there are intervening changes in facts which are arguably significant and there is no language in the prior award directing prospective application, the issue of whether the arbitrator's award should be prospectively applied is appropriately one for the arbitrator to decide." 798 F.2d at 173. Appellant contends that Arbitrator Stone's award was "inherently" prospective and that because the disputed Saturday scheduling in November 1986 was conducted identically to the scheduling giving rise to Stone's award, that award is judicially enforceable against Quarto's subsequent conduct. The Stone award, however, made no reference to prospective effect.
 
 The district court noted:
 
 10
 The function of a court in a proceeding under Section 301 of the Labor Management Relations Act (29 U.S.C.Sec. 185) is limited to determining whether the subject matter of the dispute is one which the parties have agreed to arbitrate. If any doubt exists about the arbitrability of a dispute, that doubt should be resolved in favor of arbitration.
 
 
 11
 If a court can determine from the language of the 1984 Agreement and from the precedent of A.R.B. 78-24, which the parties agreed in Article XXIII(k) to adopt, that the parties agreed that the res judicata effect of arbitration awards should be an arbitrable question, then the court's inquiry is complete at that juncture. Cf. Warrior & Gulf, 363 U.S. at 582 ("arbitration is a matter of contract").
 
 
 12
 The language of the 1984 Agreement itself applies the Agreement's dispute-resolution mechanism, which culminates in arbitration, to "[a]ny dispute arising under this Agreement." Furthermore, we observe that the language of A.R.B. 78-24 sets out that an arbitrator should decide whether a prior award is to be given res judicata effect. That decision establishes a presumption in favor of res judicata in cases between "the same parties, at the same operation, on the same fact situation, and involving the same issues of contract interpretation and application." Only if "the arbitrator is clearly and convincingly persuaded by the evidence and argument of the parties before him that a prior award is so plainly and palpably erroneous," may he refuse to apply the principle; otherwise "the arbitrator is bound to apply the prior award...." (emphasis added). Later in the same decision, the Review Board quoted Elkouri & Elkouri, How Arbitration Works 377 (3d ed. 1973), for the proposition that "[a]n award interpreting a collective agreement usually becomes a binding part of the agreement and will be applied by arbitrators thereafter." (Emphasis added). Thus, A.R.B. 78-24, which the parties agreed to adopt as precedent, we believe makes it clear that an arbitrator, not a court, determines whether a prior award is binding.
 
 
 13
 The Union argues that because Arbitrator Stone applied A.R.B. 78-24 to find Arbitrator Rimmel's supplemental award binding on the question of Quarto's ability to schedule nonvolunteering employees, the res judicata effect of that award on Quarto's subsequent conduct is conclusively established. This argument, however, fails to recognize that A.R.B. 78-24 anticipates individual application of the res judicata analysis in each subsequent case in which a party seeks to give a prior award binding effect. Although in Georgia Pacific this court recognized that a court may apply the principal of arbitral res judicata when the current conduct inarguably falls within the prohibition that was the subject of the previous award, Georgia Pacific is distinguishable in our opinion. Georgia Pacific makes no reference to any agreement by the parties as to how and by whom questions of arbitral res judicata are to be decided. In this case, by contrast, the parties' 1984 Agreement gives A.R.B. 78-24 binding precedential value. A.R.B. 78-24, in turn, makes clear that an arbitrator, not a court, is to apply that decision's analysis to decide whether or not to give a prior award binding effect. Because the parties themselves have agreed that this issue is to be decided by an arbitrator, the tests of Georgia Pacific have no application. The same rationale applies to International v. Ethyl Corp., supra.
 
 
 14
 Appellant finally contends that unless a court can find a prior arbitration award to be binding and enforce the prior award against subsequent violations, there will be no finality accorded to arbitration awards. A.R.B. 78-24, however, by supplying an arbitrator with a method by which to determine quickly whether a prior award has res judicata effect on subsequent disputed conduct, allows the Union to obtain relief without a full rehearing on each grievance. This result is not only more consistent with the presumption in favor of arbitrability, but also "one would hardly expect an employer to continue in effect an employment practice that routinely results in adverse arbitral decisions." Emporium Capwell Co. v. Western Addition Community Organization, 420 U.S. 50, 67 (1975). In addition, the result reached by the district court is in accord with the intention of the parties as expressed in their collective bargaining agreement.
 
 
 15
 Accordingly, we AFFIRM the district court's dismissal of this action. Judge Keith dissents and would apply res judicata effect to the Stone award.
 
 
 16
 DAVID A. NELSON, Circuit Judge, concurring.
 
 
 17
 Although I am not sure that A.R.B. 78-24 bears quite as broad a reading as Judge Wellford has given it, two things about that decision are indisputable: (1) by the express terms of the collective bargaining agreement between the Union and Quarto, A.R.B. 78-24 has "precedential effect under [the] Agreement;" and (2) under the express holding of A.R.B. 78-24, as paraphrased by District Judge Graham in the case at bar, "an arbitrator may refuse to apply a prior award between the same parties to a factually identical case if he is clearly and convincingly persuaded that the prior award is so plainly and palpably erroneous that it should be upset."
 
 
 18
 It seems to me, as it did to Judge Graham, that the legal underpinnings of the arbitral award made by Arbitrator Stone are shaky enough to make it obvious that a subsequent arbitrator might well find that the Stone award "is so plainly and palpably erroneous that it should be upset." Accordingly, it seems to me, Judge Graham was correct in concluding that A.R.B. 78-24 made arbitration the proper method of determining the res judicata effect of the Stone award. The facts of this case do not require us to decide who, as between a judge and an arbitrator, would be the proper person to determine the res judicata effect of the Stone award if it could not be cogently argued that the award was palpably erroneous.