## LOCAL 1545, UNITED MINE WORKERS OF AMERICA, Plaintiff–Appellant,

v.

## INLAND STEEL COAL COMPANY, a Delaware Corporation, and Consolidation Coal Company, a Delaware Corporation, Defendants–Appellees.

No. 88–2093.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 18, 1989.

Decided June 5, 1989.

Stephen Yokich, Cornfield & Feldman, Chicago, Ill., for plaintiff-appellant.

Paul J. Schroeder, Bryan, Cave, McPheeters & McRoberts, St. Louis, Mo., for defendants-appellees.

Before WOOD, Jr., and RIPPLE, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

ESCHBACH, Senior Circuit Judge.

Plaintiff–Appellant Local 1545, United Mine Workers of America ("union") filed this action in federal district court pursuant to § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, seeking to enforce two labor arbitration awards between it and defendants-appellees Consolidation Coal Company ("Consolidation") and Inland Steel Coal Company ("Inland Steel"). The district court denied plaintiff's motion for summary judgment but granted defendants' motion for summary judgment. In granting the defendants' motion for summary judgment, the court held that the issue of whether the court should give prospective effect to prior arbitration

awards was dispositive of the lawsuit. Concluding that it could not state "with positive assurance" that the awards were intended to apply prospectively, the court granted defendants' motion for summary judgment.

From the denial of its motion and the court's grant of summary judgment in favor of defendants, the union now appeals. We will address the following two issues: (1) Whether the court erred in refusing to specifically enforce the arbitration awards between the union and the defendants and (2) whether the court erred in granting defendants' motion for summary judgment because there are genuine issues of material fact. For the reasons set out below, we affirm the denial of the union's motion for summary judgment and the district court's grant of summary judgment in favor of the defendants.

## I.

The union, Inland Steel, and Consolidation have been and are parties to the National Bituminous Wage Agreements ("Agreement(s)") of 1974, 1978, 1981, and 1984. The union, a voluntary unincorporated labor organization, is the authorized collective bargaining representative for certain classified employees at what is now known as Consolidation's Rend Lake Mine in Sesser, Illinois. The Agreements establish the wages, hours, terms, and conditions of employment for Consolidation's employees at the mine who are represented by the union. The Agreements also contain a mandatory grievance arbitration clause providing for the final and binding resolution of disputes as defined in the Agreement.[1]

On May 12, 1977, the union filed a grievance contending that Inland Steel violated the 1974 Agreement on April 25, 1977, when it sent B shift workers home early

although the plant was running and "dead work"[2] was available. The union argued that Inland Steel violated prior practice and custom at the mine and thereby violated Article XXVI(b) of the Agreement. Article XXVI(b) of the Agreement provides, "[e]xcept where abolished by mutual agreement of the parties, all prior practice and custom not in conflict with this Agreement shall be continued...." Plaintiff's Complaint, Rec. 1, Exhibit B (Inland Steel's Post–Hearing Brief at 2).

In a decision and award issued September 2, 1978, Arbitrator Gibson concluded that Inland Steel violated the established practice contrary to Article XXVI(b) of the 1974 Agreement by sending the miners home early. He specifically concluded that the evidence showed that "the Employer has always kept the miners working, whether mining coal or not, for the balance of the shift if the processing plant was in operation." Plaintiff's Complaint, Rec. 1, Exhibit B (Arbitrator Gibson's Decision at 7). Therefore, the arbitrator ordered the company to pay 3½ straight time hours to all B shift miners who were sent home early.

Subsequently, the union filed another grievance when B turn employees were denied the right to work on February 11, 1982, because the silos were full and there had been a railroad derailment although "dead work" was available. In its grievance, the union stated, "[F]or the failure of Management to comply with the Arbitrators award [sic] in case 12–77–360 the Union requests a Cease and Desist order be issued for Managements failure [sic] to have the underground Employees at work." Plaintiff's Complaint, Rec. 1, Exhibit B (Arbitrator Sabella's Decision at 2). The union also alleged that the company was in violation of the established past

---

1. Article XXIII(h) of the 1984 Agreement provides "[s]ettlements reached at any step of the grievance procedure shall be final and binding on both parties and shall not be subject to further proceedings under this Article except by mutual agreement." Plaintiff's Complaint, Rec. 1, Exhibit A (National Bituminous Coal Wage Agreement of 1984 at 209).

2. "Dead work" consists of: preparing machinery, setting beds, rock dusting, cleaning the water spray, and loading shuttle cars "so that they can be dumped on the belts when coal starts running again." Plaintiff's Complaint, Rec. 1, Exhibit B (Arbitrator Gibson's Decision at 3–4).

practice provision in the 1981 Wage Agreement.

In his decision and award issued July 19, 1982, Arbitrator Sabella sustained the union's grievance. Specifically relying on Arbitrator Gibson's decision in the 1978 dispute, Sabella concluded "[i]n the light of the foregoing I am constrained to find that the practice and custom found by Arbitrator Gibson is valid and subsisting and accordingly binding on the parties." *Id.* at 5. Sabella then awarded the workers four hours pay at the straight time rate, but did not grant a cease and desist order.

On November 15, 1986, Consolidation purchased the Rend Lake Mine from Inland Steel. According to Article I of the 1984 Agreement and the Stock Purchase Agreement between Consolidation and Inland Steel, Consolidation agreed to assume all of Inland Steel's obligations under the labor agreement.[3] On January 16, 1987, the instant dispute arose between the union and Consolidation when the company allegedly sent underground employees home mid-shift although "dead work" was available and the coal processing plant was operating.

Subsequently, on February 9, 1987, the union filed a complaint in federal district court against defendants Inland Steel and Consolidation seeking specific enforcement of the Gibson and Sabella awards. The union does not allege that Inland Steel failed to comply with the terms of the Gibson and Sabella awards. The union never disputes the fact that the defendants paid the workers their appropriate back pay as provided for in the awards. Rather, the complaint is that there is a failure to comply with the awards in this subsequent dispute.

On April 28, 1987, the court set a briefing schedule on cross-motions for summary judgment. Plaintiff filed its motion for summary judgment against defendants on December 15, 1987, and defendants filed their cross-motion for summary judgment on January 28, 1988. The district court, on April 18, 1988, held oral argument on these motions. At argument, plaintiff was granted leave to file affidavits in support of its action to enforce the awards, which were filed with the court on May 5, 1988. On May 10, 1988, the court entered its judgment denying plaintiff's motion for summary judgment and granting defendants' cross-motion.[4] In granting defen-

---

**3.** Article I of the 1984 Agreement provides in relevant part:

This Agreement shall be binding upon all signatories hereto, including those Employers which are members of signatory associations, and their successors and assigns. In consideration of the Union's execution of this Agreement, each Employer promises that its operations covered by this Agreement shall not be sold, conveyed, or otherwise transferred or assigned to any successor without first securing the agreement of the successor to assume the Employer's obligations under this Agreement.... Provided that the Employer shall not be a guarantor or be held liable for any breach by the successor or assignee of its obligations, and the UMWA will look exclusively to the successor or assignee for compliance with the terms of this Agreement.

Plaintiff's Complaint, Rec. 1, Exhibit A (National Bituminous Coal Wage Agreement of 1984 at 1–2).

Article 10.7 of the Stock Purchase Agreement between Consolidation and Inland Steel states in relevant part:

Buyer agrees to assume all the obligations of Seller and ISCC under the National Bituminous Coal Wage Agreement as the same ap-

plies to the properties and operations being acquired by the Buyer hereunder.

Article 10.8.4 of the Stock Purchase Agreement further provides:

Buyer will recognize the United Mine Workers of America ("UMWA") as the collective bargaining representative of the hourly employees, including retired hourly employees, on Schedule 10.8.1 who are currently represented by the UMWA. Buyer will assume at the Closing Date, ISCC's and Seller's obligations under the National Bituminous Coal Wage Agreement of 1984, then in effect between ISCC, Seller and UMWA applicable to such employees, except those which are included in Current Liabilities as of the closing date.

Stock Purchase Agreement Between Consolidation Coal Company and Inland Steel Company (Oct. 13, 1986), Rec. 33, at 3–4.

**4.** When the district court entered judgment in this matter on May 10, 1988, it stated that judgment was entered in favor of defendant, Consolidation and against the plaintiff. However, the court made no reference to the second defendant, Inland Steel. On June 23, 1988, our court *sua sponte* issued an order requiring submission

dants' cross-motion for summary judgment, the court concluded that there were no genuine issues of material fact because the legal issue of whether the awards were intended to apply prospectively was dispositive of the action. The court further held that the defendants were entitled to judgment as a matter of law because the court could not "say with positive assurance that the awards were intended to cover the present dispute...." District Court's Order, Rec. 34, at 5. The court stated that it did not believe the awards were intended to apply prospectively because they were entered before the 1984 Agreement went into effect and because the awards did not address their prospective application.

The union appeals from the denial of its motion for summary judgment and the court's granting of the defendants' cross-motion for summary judgment. We address the following two issues on appeal. First, the union argues that the court erred in denying its motion for summary judgment because it was entitled to have the Gibson and Sabella awards enforced against Consolidation as successor to Inland Steel. Second, the union asserts that the court erred in granting defendants' mo-

tion for summary judgment because there is a genuine issue of material fact on the degree of factual identity between the instant dispute and those remedied by the Gibson and Sabella awards. We affirm.

## II.

 A court should grant a party's motion for summary judgment if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the burden of establishing that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. *Yorger v. Pittsburgh Corning Corp.*, 733 F.2d 1215, 1218 (7th Cir.1984); *Egger v. Phillips*, 710 F.2d 292, 296 (7th Cir.), *cert. denied*, 464 U.S. 918, 104 S.Ct. 284, 78 L.Ed.2d 262 (1983). In determining whether any material fact is in dispute, we review the record and all inferences drawn therefrom in the light most favorable to the party opposing the motion. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (per curiam). We will consider, however, only inferences that are reasonably drawn.

of a memorandum on the jurisdictional issue raised because our court recognized that the May 10, 1988, judgment did not mention the second defendant, Inland Steel. On June 28, 1988, the district court clarified its order granting Consolidation's motion for summary judgment. In a *nunc pro tunc* order, the court stated that it had intended judgment to be entered also in favor of defendant, Inland Steel. This order, making judgment final against both defendants, was entered *nunc pro tunc* as of May 10, 1988, the date of the original judgment from which the appeal had been taken.

Because we were concerned that the notice of appeal was filed prematurely since it was filed before the court entered a final judgment against *both* defendants, we asked the parties to submit additional briefs on this issue. We now believe that the notice of appeal was timely because the *nunc pro tunc* order is a correction of a clerical error, and thus is governed by Federal Rule of Civil Procedure 60(a). The district court had the authority to make a clerical correction even after the notice of appeal had been filed. *Dunlop Holdings, Ltd. v. Ram Golf Corp.*, 524 F.2d 33, 35 n. 5 (7th Cir.1975), *cert. denied*, 424 U.S. 958, 96 S.Ct. 1435, 47 L.Ed.2d 364 (1976). Because the district court corrected

its mistake after the appeal was docketed in our court, it was required to have leave of our court in order to make its correction.

Since the district court's correction was made in response to our *sua sponte* order, it seems clear that leave existed for the precise correction that the district court made. Furthermore, following the entry of the *nunc pro tunc* order by the district court, we issued an order dated July 14, 1988, setting out a schedule for the parties to file briefs on the merits of this appeal. Both of these orders strongly imply that the district court's correction was made with leave of our court.

"The entry of an order correcting a clerical mistake pursuant to Rule 60(a) does not start the time for appeal running again." *United States v. 1,431.80 Acres of Land, More or Less, in Cross County, Ark.*, 466 F.2d 820, 822 (8th Cir. 1972) (citing *Lieberman v. Gulf Oil Corp.*, 315 F.2d 403, 404 (2d Cir.), *cert. denied*, 375 U.S. 823, 84 S.Ct. 62, 11 L.Ed.2d 56 (1963)). Likewise, an order to correct a clerical error in the entry of judgment does not suspend the running of time for filing a notice of appeal. *Id.* Accordingly, the notice of appeal was timely filed within thirty days of the court's May 10 judgment, and we have jurisdiction to consider the merits of this appeal.

*Korf v. Ball State Univ.*, 726 F.2d 1222, 1226 (7th Cir.1984). If the movant meets his initial burden, the opposing party must set forth specific facts to show that there is a genuine issue for trial. *See Egger*, 710 F.2d at 296. Faced with this burden, the opposing party cannot rely solely on mere allegations or denials of his pleadings. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Posey v. Skyline Corp.*, 702 F.2d 102, 105 (7th Cir.), *cert. denied*, 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983).

Furthermore, the mere presence of a factual dispute does not preclude summary judgment "unless the disputed fact is outcome determinative under the governing law." *Egger*, 710 F.2d at 296. Even if some facts are in dispute, if the "undisputed facts demonstrate that one party is entitled to judgment as a matter of law, summary judgment in favor of that party is entirely appropriate." *Collins v. American Optometric Ass'n*, 693 F.2d 636, 639 (7th Cir.1982). With this procedural background in mind, we consider the union's claim that it is entitled to judgment as a matter of law because the court was required to enforce the prior arbitration awards against Consolidation in the instant dispute.

There is currently a split among the circuits as to the proper standard to apply for prospective enforcement of an arbitration award. In *United Mine Workers of America District No. 5 v. Consolidation Coal Co.*, 666 F.2d 806, 811 (3d Cir.1981), the Third Circuit held that a court:

> must be able to say "with positive assurance" that the award or settlement was intended to cover the dispute. If the court has any doubt, the parties should be returned to their grievance procedure and arbitration, for it is an arbitrator, and not the court, who is to decide whether the same issue has already been resolved in an earlier proceeding.

Although the union in that case made an argument similar to one the union articulates in the instant case, namely that unless the court enforces a prior award pro-

spectively, the union will be forced to resort to the time consuming and expensive process of arbitration, the court declined to award the prospective relief requested. Instead, the court chose to respect the parties bargained-for method of dispute resolution, arbitration.

Likewise, other courts have emphasized the need for judicial deference to the arbitration process in determining whether an arbitration award should apply prospectively. The Sixth Circuit, in *United Paperworkers v. Georgia Pacific Corp.*, 798 F.2d 172, 173 (6th Cir.1986), stated that "[w]here there are intervening changes in facts which are arguably significant and there is no language in the prior award directing prospective application, the issue of whether the arbitrator's award should be prospectively applied is appropriately one for the arbitrator to decide." *See also International Bhd. of Elec. Workers, Local Union No. 199 v. United Tel. Co.*, 738 F.2d 1564, 1572 (11th Cir.1984) ("[W]hether or not the award is 'final' in a stare decisis sense is an issue for further arbitration."); *Little Six Corp. v. United Mine Workers, Local Union No. 8332*, 701 F.2d 26, 29 (4th Cir.1983) ("[T]here is solid, well-reasoned case law holding that the preclusive effect of a prior arbitral award is itself a question for arbitration."). *But see Fournelle v. NLRB*, 670 F.2d 331, 345 (D.C.Cir.1982) (court held Board should have given precedential effect to arbitrator's award in subsequent, similar situation).

In contrast, the Fifth Circuit has taken a slightly different approach in determining whether an arbitration award should apply to a subsequent dispute. In *Oil Chemical & Atomic Workers International Union, Local No. 4–16000 v. Ethyl Corp.*, 644 F.2d 1044, 1055 (5th Cir. Unit A May 1981), the court enunciated its "material factual identity" standard. " 'Material factual identity' exists when there is no difference between the current facts and those giving rise to the prior arbitration award which, when analyzed in light of the mandates of the collective bargaining agreement, would justify an arbitrator's reaching a different conclusion in each of the two cases." *Id.*

In that case, an arbitrator in 1973 determined that the employer's practice of assigning supervisory personnel to jobs normally performed by hourly-rated union employees violated the collective bargaining agreement. Having found a violation of the agreement, the arbitrator ordered the company to " 'desist from violations such as that involved here.' " *Id.* at 1047 (quoting Record at 18). In the award portion of his opinion, the arbitrator reiterated his order to the company to " 'hereafter ... desist from like violations.' " *Id.* Based on the explicit wording of the arbitrator's award, the union attempted to enforce it in what the union alleged was a similar case in 1979. The court held that the district court had improperly granted the company's motion for summary judgment and remanded the case for the court to decide, under the "material factual identity" test, whether the award should apply in the subsequent dispute. *Id.* at 1055.

While it might appear as if the Fifth Circuit was endorsing a liberal policy in favor of prospective enforcement of arbitration awards, the court further clarified its position in a later case. In *Oil, Chemical & Atomic Workers International Union, Local 4–367 v. Rohm & Haas, Texas, Inc.,* 677 F.2d 492, 494 (5th Cir.1982) (per curiam), the court declined to enforce an arbitration award prospectively in a subsequent, similar dispute. In refusing to apply the award prospectively, the court stated that "[t]o do so would usurp the function of the arbitrator and violate the rule that awards may be enforced only as written." *Id.* The court distinguished its earlier opinion in *Ethyl* by explaining that the award in that case specificaly prohibited "like violations." *Id.* at 495. Since the court refused to enforce the award, the court held that the union would have to invoke the arbitration process to determine whether the award was intended to apply to the subsequent dispute.

The First Circuit's approach to the issue of prospective enforcement of arbitration awards parallels the Fifth Circuit's handling of this issue. In *Boston Shipping Association v. International Longshoremen's Association,* 659 F.2d 1, 4 (1st Cir.

1981), the court, relying on the Fifth Circuit case of *Ethyl,* held that a prior arbitration award, defining the geographic boundaries of Berth 13 at a Castle Island terminal facility, could be enforced in a subsequent, similar situation. The court explained that although the award was not directed at future "like violations" as in *Ethyl,* the award was inherently prospective because it defined a physical location. *Id.*

The First Circuit, however, had another opportunity to discuss the prospective application of arbitration awards in *Derwin v. General Dynamics Corp.,* 719 F.2d 484 (1st Cir.1983). In that case, the union was asking the court to confirm a prior arbitration award although the union never alleged that the company had violated the award in any way. In dismissing the union's suit to confirm the award, the court emphasized its limited ability to interfere with the arbitration process. Deferring to the parties' agreed upon method of dispute resolution, the court stated:

> Only where an arbitral award is both clearly intended to have a prospective effect and there is no colorable basis for denying the applicability of the existing award to a dispute at hand, will a court order compliance with the award rather than require the parties to proceed anew through the contract grievance procedure.

*Id.* at 491.

### III.

Relying on the Third Circuit's "positive assurance" test, the district court in the instant case refused to enforce the Gibson and Sabella arbitration awards prospectively. Concluding that it had "substantial doubt" about whether the awards were intended to govern the instant dispute, the court denied the union's motion for summary judgment and granted the defendants' cross-motion for summary judgment. District Court's Order, Rec. 34, at 5–6. We affirm the denial of the union's motion for summary judgment and the granting of the defendants' motion for summary judgment, but for slightly different reasons.

The closest case on point on the issue of prospective enforcement of arbitration awards in our circuit is *United Electrical Radio & Machine Workers v. Honeywell Inc.*, 522 F.2d 1221 (7th Cir.1975). The analysis in that case is generally in line with the cases from the other circuits. In *Honeywell*, four arbitrators sustained the union's grievances and held that the company violated the collective bargaining agreement by assigning work that union members usually performed to supervisors. Although the union did not complain that the company had failed to comply with the terms of the awards, the union, as does the plaintiff in the instant case, sought to have our court enforce the arbitration awards in a subsequent dispute. In affirming the district court's dismissal of the union's complaint for failure to state a claim, we stated:

> ... it is most unusual to find a party seeking the right to bypass arbitration procedures which it is contractually bound to follow and which are concededly applicable to the particular incidents generating disputes. Although we do not foreclose the possibility that there might exist *particularly egregious circumstances* which, if alleged, might state a cause of action for relief from a contractual duty to arbitrate, it is our opinion that the allegations of the complaint before us are not sufficient to state such a cause of action.

*Id.* at 1225 (emphasis added).

As the language quoted above indicates, we focused on the facts alleged in that particular complaint, rather than articulating a broad, general standard to apply in determining whether to enforce an arbitration award prospectively. In *Honeywell*, we found the facts alleged in the union's complaint deficient in three respects. However, we did not state that those were the only three factors to consider in deciding whether to apply an award in a subsequent dispute. *See id.* at 1228 ("[T]he Union has failed to allege *at least three circumstances* which would be basic to any judicial relief from a contractual duty to arbitrate." (emphasis added)).

■ As we discussed in *Honeywell*, there are several factors that a court must consider in deciding whether to enforce an arbitration award prospectively, rather than leaving the issue itself to arbitration. In *Honeywell*, we dismissed the union's complaint because the union failed to allege three of these factors. The union, in *Honeywell*, failed to aggregate its grievances in a single arbitration proceeding. This factor, however, is irrelevant in the instant case because the union has resorted to litigation, rather than to filing a grievance. In *Honeywell*, the union also failed to request any declaratory or injunctive relief from the arbitrator. In contrast, the union in the case at bar did request a cease and desist order in the grievance it submitted to Arbitrator Sabella. However, unlike the arbitrator's award in *Ethyl*, Sabella did not require Inland Steel to desist from violations such as those involved here or to desist from "like violations." The fact that neither the Gibson nor the Sabella awards contain language directing that they apply to "like violations" strongly indicates that the arbitrators did not want the awards to apply prospectively. The conclusion that the awards were not intended to apply prospectively is further strengthened by the language of Article XXIII(c)(4) of the 1984 Agreement which provides "[t]he arbitrator's decision shall be final and shall govern only the dispute before him." Plaintiff's Complaint, Rec. 1, Exhibit A (National Bituminous Coal Wage Agreement of 1984 at 207).

■ The complaint in *Honeywell* was also deficient because the union did not allege that the facts of the arbitration awards in its favor were "substantially identical" to the facts in the other grievances not yet submitted to arbitration. Intertwined with this factual identity element is also the requirement that the company's conduct "constitutes wilful and persistent disregard of the arbitration awards." *Honeywell*, 522 F.2d at 1227. While we believe that the union, in their evidentiary affidavits, alleged that the facts of the Gibson and Sabella awards were "substantially identical" to the facts in the instant

action, the union never alleged that the companies' conduct "constitutes wilful and persistent disregard of the arbitration awards." As a matter of law, we do not believe that three isolated incidents of sending workers home early when "dead work" is available over a ten year period constitutes "wilful and persistent disregard of the arbitration awards." Our confidence in this conclusion is reinforced by the fact that while there have been many occurrences in which the workers were not mining coal and the processing plant was operating, there have been only three recorded incidents in which the workers were sent home early. Rather than arguing that the companies' conduct was persistent and willful, the plaintiff freely admits that the companies' action of sending the employees home while there was "dead work" to be performed "has occurred only three times in this mine's history." Brief for Appellant at 22.

The union argues that submitting a grievance on this dispute to arbitration serves no "useful" purpose. The union contends that arbitration of this dispute will only increase costs and delay it from getting the relief it deserves. We disagree. We do not believe it is necessary for us to protect the arbitral process from repetitive grievances. In submitting the grievance to an arbitrator, the union is free to argue that it has already submitted this same dispute to arbitration. *See Local 103, Int'l Union of Elec., Radio & Mach. Workers v. RCA Corp.,* 516 F.2d 1336, 1341 (3d Cir.1975) ("Open to the union, before the arbitrator, is the same contention it has presented to the courts, *i.e.,* that the 'same question or issue' was previously the 'subject of arbitration.'"). In that way, the arbitrator can consider the fact that the dispute was previously arbitrated and decide for himself if he believes that declaratory or injunctive relief is warranted by the facts of the case.

As we said in *Honeywell,* "notions of *res judicata* are less suited to the informal process of industrial arbitration than to the litigation process...." 522 F.2d at 1228. Although we are mindful of the Supreme Court's warning that "one would hardly expect an employer to continue in effect an employment practice that routinely results in adverse arbitral decisions," *Emporium Capwell Co. v. Western Addition Community Org.,* 420 U.S. 50, 68, 95 S.Ct. 977, 987, 43 L.Ed.2d 12 (1975), we decline to enforce the prior arbitration awards based on the facts of this case. In concluding our discussion of the issue in *Honeywell,* we stated:

> Should the occasion arise when an employer defies such expectations and deliberately persists in conduct in clear violation of a prior arbitration award, which leaves a union without an appropriate remedy, we will have to face squarely the question of whether such circumstances may constitute an exception to the holding of the *Steelworkers* trilogy.

522 F.2d at 1228. Such an occasion does not present itself based on the facts of the instant case. The union has not alleged sufficiently egregious facts which can allow us to supplant the arbitral process. Therefore, we believe that the district court properly denied the union's motion for summary judgment. However, we want to make it clear that we are deciding solely the merits of the instant case and do not foreclose the possibility that a party could allege sufficient facts to avoid the arbitral process in a different situation.

## IV.

The union also argues that the court erred in granting the defendants' motion for summary judgment because there are genuine issues of material fact. Specifically, the union claims that there is a genuine issue of material fact on the degree of factual identity between the instant dispute and those covered by the Gibson and Sabella awards.

However, as discussed above, the presence of a factual dispute does not preclude summary judgment "unless the disputed fact is outcome determinative under the governing law." *Egger,* 710 F.2d at 296. The union is unable to establish that a factual dispute over the degree of factual identity among the awards is outcome determinative under the law. While we

agree that the union has alleged that the factual basis of the arbitration awards in its favor are "substantially identical" to the facts in the instant dispute, it has failed to allege that the awards were intended to apply prospectively and that the companies' "conduct constitutes wilful and persistent disregard of the arbitration awards." *Honeywell*, 522 F.2d at 1227. Therefore, we believe the district court properly granted the companies' motion for summary judgment.[5]

## V.

For all the foregoing reasons, the district court's judgment is

AFFIRMED.

---

**5.** While appellant has raised an additional issue, whether the court erred in failing to enter judgment for it because the arbitration awards "draw their essence" from the collective bargaining agreement, we will not discuss this issue because it is lacking in merit. A court can review an arbitral award solely to determine if it "draws its essence from the collective bargaining agreement." *See United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960). However, neither party challenges the validity of either of the two, prior arbitration awards. Furthermore, the union never alleges that the defendants failed to comply with the terms of the Gibson and Sabella awards. The union does not dispute the fact that the defendants complied with the awards by paying the miners the appropriate back pay. Instead, appellant is asking us to enforce the prior awards in this subsequent dispute. As discussed throughout the text of this opinion, this is something we decline to do based on the facts of the instant case.